INZER, Justice.
This is an appeal by Communications-Equipment Company, Inc. and Home Indemnity Company from a judgment of the Circuit Court of Harrison County, wherein that court affirmed an order of the Workmen’s Compensation Commission awarding-compensation to claimant, Lee Roy Burke. The Commission’s order apportioned the *766 award because of a pre-existing physical handicap, and claimant has cross-appealed.
Claimant, a white male thirty-four years of age, was employed as a salesman- by Communications Equipment Company, Inc., at Handsboro, Mississippi. He had been so employed for more than a year prior to May 16, 1963, the date of the injury, at an average weekly wage of $132.06. In addition to his duties as a salesman, claimant assisted in unpacking merchandise and displaying it, and in loading television sets for delivery. He often went with the deliveryman to deliver the sets. He demonstrated color television sets, and this required some stooping and bending. Prior to May 16, he had experienced no difficulty in the performance of his duties, although he did walk with a limp, due to an injury he received in an automobile accident in 1955. In this accident he suffered a compound fracture of the upper one-third of the right femur. Before he had completely recovered from this accident, he fractured one of the unions by suddenly twisting his body while standing on the sidewalk. He developed a hematoma in the area of the fracture, .and had some drainage which the doctor interpreted to be from an infection and from the hematoma. A sequestrectomy was performed on two occasions thereafter to remove small portions of dead bone and •sinus infected tissue. He suffered from ■chronic osteomyelitis from that time until the injury in question, and the bone in his leg had become hard and brittle.
On May 16 at about 5:00 p. m. claimant was attempting to unpack a color television set. The set was packed in a heavy cardboard carton, the top of which was glued and stapled. The method used to remove the set from the carton was to catch hold of the top flaps and jerk back to get the flaps up. When claimant jerked on the flap, he stumbled and immediately felt a sharp pain in his leg. He sat down in a chair and was unable to do any more work. He did get up and walk a short distance to get a cup of coffee. At about 6:30 he hobbled to his car and started home. He stopped by a curb market and picked up some groceries and then drove home and parked his car near the front steps of his house. His children came out to meet him, and his son carried the groceries into the house. Claimant was able to walk into the house, and he sat down on the couch. His leg was hurting, and he -took two B-C tablets and rubbed his leg with Ben Gay. He drank two or three cans of beer, and the pain subsided enough for him to go to sleep on the couch. He woke up about 11:00 suffering terrific pain. His wife called an ambulance, and he was carried to the hospital. It was ascertained that he had suffered a traverse fracture of the upper one-third of the right femur. Dr. Griffin Bland, an orthopedic surgeon, examined him and had X-rays made, and they revealed that there was a slight displacement of the bones. Traction was applied, and Dr. Bland recommended that the traction be continued for a week or two, and then a cast be applied. However, on May 21 claimant decided to change doctors, and from that date, he was treated by Dr. Charles Floyd. Dr. Floyd found that the traction was not handling the problem of the overriding bones as it should. Because of the infection from the break and the previous osteomyelitis, Dr. Floyd decided that the chances that the fracture would heal were remote. He recommended that claimant’s leg be amputated. Several other doctors recommended the same procedure, and the leg was amputated. Dr. Floyd testified that the pre-existing condition of osteomyelitis was a material factor in the decision to amputate the leg.
Claimant was in the habit of drinking, and after his leg was amputated, his drinking became an acute problem. He developed an abscess in his hip, and had symptoms of peptic ulcers. He was returned to the hospital for treatment. Dr. Floyd was not sure what caused the abscess, but said that pressure from his prosthesis was one *767 of the probabilities. Claimant also developed a nervous condition, and Dr. Floyd called in Dr. George Wilson, a psychiatrist who treated claimant from March 3, 1964, until the time of the hearing before the attorney-referee on July 15, 1965. Dr. Wilson examined claimant, and his findings were in his words: “The mental status examination and diagnosis was depressive reaction, and, also, alcoholism secondary to the depressive reaction.” It was his opinion that the cause of claimant’s alcoholism was the amputation of the leg and that it was precipitated or brought out by the depressive reaction. It was also his opinion that claimant was disabled at least twenty-five percent from a psychiatric illness. Dr. Bland testified that it was his opinion that claimant was an alcoholic prior to the injury in question.
The attorney-referee found that claimant received an accidental injury on May 16, 1963, in the course and scope of his employment and that he reached maximum medical recovery on December 15, 1963; that as a result of the injuries, claimant’s right leg was amputated; and that he suffered from a pre-existing condition to his right leg, which contributed twenty-five percent to the amputation of the leg. He further found that claimant’s depressive reaction and alcoholism was not a result of the accidental injury. He ordered that claimant be paid temporary total disability benefits from May 16, 1963, through December 15, 1963, and that he be paid permanent partial disability from December 15, 1963. He ordered that the compensation be apportioned because of the pre-existing condition.
The employer-carrier appealed to the Commission, and it affirmed the findings and order of the attorney-referee. The employer-carrier then appealed to the circuit court, wherein the order of the Commission was affirmed. The circuit court allowed an appeal by employer-carrier to this court, and claimant cross-appealed.
The only contention made by employer-carrier on this appeal is that the order of the Commission awarding compensation is against the overwhelming weight of the law and evidence and is not supported by any substantial evidence. We find no merit in this contention. The evidence is beyond dispute that the claimant was injured while in the course and scope of his employment. However, employer-carrier contends that appellant did not break his leg as a result of this injury, but that it happened as a result of a fall later that day. This contention is based upon the testimony of Dr. Bland, who testified that claimant told him the following day that he broke his leg when he got out of his car at about 10:30 p. m. by stepping on the curb in front of his house, which caused him to fall. Dr. Bland was also of the opinion that it was not probable for claimant to have broken his leg in the manner described by him, and thereafter to have been able to do the things that he did. Dr. Floyd testified that appellant’s version of the accident and the following events were entirely probable. Claimant denied that he told Dr. Bland that he broke his leg as a result of the fall the night after the injury. The Commission decided this issue on conflicting evidence, and there is substantial evidence to support its findings. Therefore, the judgment of the circuit court affirming the order of the Commission awarding compensation must be affirmed.
On cross-appeal claimant urges that the circuit court was in error in affirming the order of the Commission for two reasons: (1) that the apportionment and the findings of the Commission that claimant suffered a pre-existing condition of the right leg which contributed twenty-five percent to the loss of his leg are manifestly wrong; (2) that the Commission was in error in finding that claimant’s depressive reaction and alcoholism were not a result of the injury, and that such *768 finding is manifestly wrong and contrary to the great weight of the evidence.
Claimant contends that Mississippi Code Annotated section 6998.09 (Supp.1964) provides for definite compensation for the loss of a leg and that it makes no distinction between the loss of a perfect leg .and the loss of a diseased leg. However, Mississippi Code Annotated section 6998-04 ■(Supp.1964) as amended provides in part:
Where a pre-existing physical. handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such pre-existing physical handicap, disease or lesion contributed to the production of the results following the injury.
The evidence is sufficient to support the findings of the Commission that the pre■existing disease of claimant’s leg was a material, contributing factor to the amputation. The legislature did not see fit to except any type of injury from the apportionment provided above, and the Commission correctly approved the findings of the attorney-referee in this respect.
We find no merit in the contention that the finding of the Commission that ■claimant’s depressive reaction and alcoholism was not a result of the injury is ■manifestly wrong. The evidence was in conflict on this point, and there is substantial evidence to support the finding ■of the Commission.
For the reasons stated this case is affirmed on both direct and cross-appeal.
Affirmed.
GILLESPIE, P. J., and RODGERS, JONES and BRADY, JJ., concur.