JONES, Justice:
This Workmen’s Compensation case comes to us from the Circuit Court of Washington County. Appellee was a fireman. The proof showed that he worked alone at night, firing three steam boilers in the plant of appellant, Chicago Mill and Lumber Company; that there was in use a conveyer chain which occasionally slipped from its sprocket and had to be replaced; that on two occasions in 1965, to-wit: April 8 and August 5, claimant was injured while undertaking to replace the moderately heavy chain, the exertion which was .required, causing at least a strain on his back.
On hearing, the attorney-referee held that as a result of the injury of August 5, combined with his preexisting condition, claimant was and would be permanently and totally disabled, with sixty percent of his disability attributable to the previous condition, and forty percent thereof having a direct causal relationship to his employment and the injury of August 5.
This finding was unanimously approved by the Commission, and on appeal to the Circuit Court of Washington County, was affirmed.
Here, appellant argues: (1) no substantial evidence to support a finding of causal connection; (2) no disability attributable to a back strain; (3) the allowance of forty percent attributed to the injury was excessive; and (4) it was error to delay commencement of the apportionment until the date of the attorney-referee’s order and to decline to apportion the maximum allowable under the Act.
The theme of appellant’s appeal is that there is no corroboration of the injury of claimant, and that the evidence of the doctors is not based upon findings by them, but is based solely upon statements of the claimant.
*83 Both injuries were reported to the employer and medical aid was furnished by Dr. Jerome Hirsch the company physician.
The office manager of appellant testified that the claimant was employed continuously from 1952 until the accident in August of 1965; that he then left the employment claiming to be unable to work because of a back injury; that after the injury in April, he was off from work from April 12 until May 10, when he returned and worked through August 8. For the April injury, claimant was sent to Dr. Jerome Hirsch who released him to return to work on May 10. The manager did not have a final medical report from Dr. Hirsch as to the August injury.
The claimant testified that he did not return to work after the August injury because he was disabled; that the company sent him to Dr. Hirsch who gave him some medicine to apply to his back and a corset-like back brace; that he was still wearing the brace on the day of the hearing, practically a year after the second injury. He had signed a release for the first injury but not for the second. He had also been sent to or had seen other doctors, including Dr. Tutor in Jackson, Dr. Unkauf in New Orleans, and Dr. N. R. Frisby of Greenville.
Appellant accepted the claim of appellee for the injury received in August, and entered into an agreement for the payment of compensation at the rate of $35 per week to be paid during disability. These payments were continued until December, at which time the appellant offered claimant $1,800 as a lump-sum settlement. The offer was declined, and thereupon the weekly payments were stopped; this stopping of payments was the reason for the allowance of penalties, as provided by the Act.
There were introduced several of claimant’s friends, and acquaintances living in his neighborhood, each of whom testified; that they recalled him hurting his back in April and August; that before the injuries he was normal, and went about his regular routine as a normal man would, but since the August injury, particularly, he had not been doing anything but staying around home; and that he used a cane in walking; that he “kinda limps” and that you never see him without his cane; that prior to the injury, he was active and needed no cane. One of the neighbors said he had difficulties now when he sat down. Witness said that there was certain seats in which he had to sit, and if he did not, someone would have to- help him arise.
Dr. Frisby was duly qualified as a licensed physician in Greenville. He said that claimant came to see him complaining of pain in the lower back extending from the neck to the limbs. Dr. Frisby made the following objective findings:
Well, first, he walked with a cane, bent over, and his gait was somewhat impaired and he complained on twisting from side to side and bending his legs, and there was muscle spasm when pressure was applied to the lower part of his back. The muscle spasm was moderately severe.
He gave him various medicine for pain, including a narcotic, which was given, the doctor said, “because the pain was severe.” His diagnosis was that the patient had a strained and pulled muscle of the lower back with possible ruptured vertebral disc. When asked if that condition was permanent, he stated, “I would say ninety percent of the cases are permanent.” He further stated that his prognosis was grave, and when asked whether he had an opinion as to any causal relationship between the accidents that he described and the doctor’s findings, his answer was, “I’m of the opinion that his condition was caused by injuries that he received, providing that the history given is correct.”
The record discloses no dispute of the history given, and so it must be assumed that the history was correct. On cross-examination, the doctor said that it was his opinion that the claimant had a strained and pulled muscle in his back, with probable injury to the vertebral disc. When further asked on cross-examination whether, looking only at the strained and pulled muscle, which the doctor definitely found, it was a *84 permanent or temporary condition, the doctor said, “I’m basing it on the treatment. I’ve treated him and it still exists, so I’m of the opinion it will be there unless something else is done.” Further, “The condition, the pain is permanent there. Whether it’s caused by the pulled muscle or vertebral disc, the pain is still there, in spite of the treatment.”
The doctor further testified that the muscle could be strained to the extent that it was torn, in which case the injury would last for years; and that he had seen a strained and pulled muscle which caused pain for years; and that this claimant’s condition was not any better in spite of the treatment.
Dr. Frisby, on further questioning, stated that there was muscle spasm when he pressed on the claimant’s back. The muscle spasm was in the lumbar, or lower back, level. When asked as to what he related the enlargement of the abdomen, and pain when pressure was applied, his answer was, to nerves from the spinal cord, but the accident did not directly contribute to this condition. As shown by the doctor’s statement of account, he had had fourteen office visits from the claimant.
Dr. Byron M. Unkauf of New Orleans, an orthopedic specialist, was examined by written interrogatories. He examined claimant February 17, 1966, six months after the August injury.
He made x-rays of the claimant which revealed the lowest intervertebral disc space had narrowed and there was some lipping of the fourth and fifth lumbar vertebral bodies.
His objective findings were:
The examination revealed that he stands with a flat back with some paravertebral muscular spasm of the lumbar area, with a limited range of movement with pain in the low back area. There is no gluteus medius tenderness. His knee and ankle jerks are present and equal, and his plantar responses were flexor. I could detect no sensory impairment in his lower limbs. There was no wasting of the calf or thigh muscles. There is a slightly positive knee-head test at 80 degrees, and a slightly positive Lasegue’s test at 125 degrees.
Dr. Unkauf examined claimant on November 14, 1966, and claimant was wearing a corset which he said he could not get along without. He was not working. Stooping causes pain. He uses a cane. In response to employer’s interrogatory eighteen, the doctor answered:
The objective findings on that date revealed no paravertebral muscular spasm, and a reasonable range of movement accompanied by pain. His knee and ankle jerks were present and equal. He has a positive right knee-head test at 80 degrees, and a positive right Lasegue’s test at 125 degrees. I felt there was very little change from that expressed in my previous report subsequent to his examination of the 17th. of February. I still maintain this man is not fit to return to his employment.
When asked the relationship between the injuries and the disability, he replied:
I feel that the details, as given by the patient to me on his first examination and contained in the medical report dated March 17, describing an injury which occurred in June of 1965, could be responsible for his complaints, and I feel that the second accident of August 8, 1965, just aggravated the condition that much more.
This, of course, did not base the conclusion on a probability, but he did say:
* * * I feel that the second accident of August 8, 1965, just aggravated the condition that much more.
His prognosis was:
I felt that the above has residuals of a strain, together with some aggravation of his unstable back. It is possible that he may have a lower lumbar disc protrusion which has prolonged his inability to work and has produced his clinical findings. I feel that the prognosis at this time is guarded.
*85 In answer to questions twenty-four and twenty-five, Dr. Unkauf testified:
In answer to question No. 24, I feel that the complaints and clinical findings, as found in this examination on the 17th. of February, 1966, are such that he is unable to perform the laboring duties as a fireman as described to me as being present at the Chicago Mill & Lumber Co.’s place of employment.
I felt that if nothing was done in an effort to relieve him of his complaints that his condition would be permanent and would deteriorate, in view of the fact he is sixty years of age.
In answer to question sixteen, he stated:
As respects [subdivision] “c”, it is my understanding and I feel that the preexisting condition was aggravated by his first injury in June, 1965, and, though there was some improvement, he reag-gravated the condition substantially more on the eighth of August, 1965.
So far as estimating in terms of percentage the degree of contribution on account of the preexisting condition to the patient’s present disability, this man was able up until his injury in June, 1965, to be fully employed on a satisfactory work basis so far as I have been able to ascertain from the patient, but since that injury he has not been ever fit, though he did return to work for about one month only to have a recurrence of his injury.
Dr. Jerome B. Hirsch was called on behalf of the defendant. He is a practicing physician in Greenville, Mississippi, and first saw claimant on April 12, 1965. He was complaining of pain in his back, and stated that he had hurt his back while putting a chain on a sprocket, straining his back in the waist line area, lumbar region. Dr. Hirsch x-rayed, ordered a lumbar belt for him, and gave his some Vitamin B12 shots, “to try to stop some of the pain at that time.” He was discharged May 10, 1965, and sent back to work. The next time he saw him was August 9, 1965, and he was complaining of a similar situation,- having pain across the lumbar region. The claimant stated at that time that he injured his back while replacing a chain on a sprocket. Dr. Hirsch did not x-ray him at that time, feeling that it was a re-injury of the old condition. He stated that:
At that time he was complaining of pain in his back, as I said, and we gave him muscle relaxants, specifically Vallium, and a lotion called Banalg and had him rub his back with that and we told him to take hot baths, rub his back. During the course of the treatment we gave him some injections also. Sometimes he would feel all right and on other days he would complain of pain and the pain would move up into his shoulder area and he began having a tremor in his hand; he progressed along sometimes feeling better and sometimes he wouldn’t. We thought we were getting somewhere for a while and continued on the B12 shots and we also treated him for some high blood pressure, never real high but it was 170/110.
The doctor could not explain the tremor in his hands, but stated that claimant began having pain in the back of his neck and in the shoulder region. The pain was originally in the lumbar region. The doctor followed him in his treatment from August 9 to December 28. The patient had not improved enough, and the doctor thought possibly he had overlooked something and wanted to send him to Dr. Tutor, a neurologist, in Jackson. Dr. Hirsch demonstrated by the x-rays, the existence of some defects that he thought had existed for some time prior to the accident.
He did say that the narrowing of the interspace, when one has not had a previous injury, is usually due to a degenerated disc. He found no evidence of any fracture from the x-rays. In answer to this question:
Q. Now I’ll ask you whether or not, Doctor in your opinion, assuming *86 that George Brown in the course of his employment did what he told you he did and strained his back, whether or not that incident aggravated in any way this pre-existing condition ?
A. I am sure that it did.
Q. On your examination what evidence of aggravation did you find?
A. He had pain, tenderness and muscle spasm in the lumbar region.
The doctor further stated that the aggravation he mentioned continued almost the entire time he treated him. Some days claimant would feel no pain and two days later he was having the original pain. The muscle spasm was not always there; that was relieved, but when he would try to bend, or attempt to reproduce the conditions under which he worked, bending, and pulling, and so forth, he would have that same pain. He just continued to have the pain, and the doctors continued to try to do something for it.
Dr. Hirsch said he found no objective symptoms of pain. The doctor testified for the defendant that as between the preexisting condition and the injury, he would apportion the disability on the basis of seventy-five percent on existing conditions, and twenty-five percent to the accident.
On cross-examination, Dr. Hirsch was asked:
Q. * * * there’s no doubt in your mind he had at least twenty-five percent caused by the accident, the way I understand it ?
A. I think so.
Q. And it could be more or probably more?
A. Can’t tell.
Dr. Forrest T. Tutor testified, among other things, that the claimant was not cooperative. In response to this, Dr. O. J. Andy the chairman and professor of neuro-sur-gery at the University Medical Center at Jackson, Mississippi, was introduced in rebuttal. After telling of his examination, he said that during his examination, the claimant did not understand many of his directions and requests in the tests and did not perform them. However, Dr. Andy testified that, based upon reasonable medical certainty, he believed that the complainant’s injuries, which developed following the accidents, were due to the accidents, which claimant described.
Dr. Andy further stated that he thought that the claimant was totally disabled; that the injury which he sustained, really disabled him as far as being able to carry out his usual activities. Dr. Andy also related the disabilities to the accidents.
We hold that there was substantial evidence to support the finding of the Commission that he was injured in the course of his employment, and that the medical evidence established causal connection and supported the finding of the Commission that the claimant was permanently and totally disabled, and that the apportionment of disability of sixty percent to the existing condition and forty percent to the injury was supported by medical proof.
Further that the testimony supports the finding for the imposition of penalties as provided by Section 13(e) of the Act on compensation due and unpaid.
The orders in this case were rendered prior to the decision of Cockrell Banana Company v. Roy Harris, 212 So.2d 581 (Miss.1968), and under that decision, the order directing the payment of $35 a week for the period commencing August 6, 1965, and continuing to the date of the order is modified so as to .provide that permanent and total disability compensation should be, and is, apportioned from the date of the injury, August 6, 1965; and the said order is also modified so as to provide that the maximum allowable shall be also apportioned in accordance with the case aforesaid. With the modification as hereinbe-fore stated, the case is affirmed.
Affirmed with modification.
ETHRIDGE, C. J., and RODGERS, BRADY and SMITH, JJ., concur.