ETHRIDGE, Chief Justice:
The Workmen’s Compensation Commission (upholding its attorney-referee) awarded total and permanent disability benefits to claimant, William Eugene (Billy) Tiffee and declined to apply any apportionment for pre-existing physical infirmities, on the ground that they were not material contributing factors in the results following injury. The Circuit Court of Adams County agreed. We affirm the award of compensation benefits to claimant, but reverse in part as to apportionment, and remand this cause to the Commission to determine apportionment under the statute. Mississippi Code 1942 Annotated section 6998-04, as enacted in Mississippi Laws 1960, Chapter 277 (in effect at time of injury) provided:
Compensation shall be payable for disability or death of an employee from injury arising out of and in the course of employment, without regard to fault as to the cause of the injury, subject to the following:
Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such pre-exist-ing physical handicap, disease or lesion contributed to the production of the results following the injury.
Tiffee had been working for a number of years for International Paper Company. Before the accident of May 22, 1966, he suffered continuously from substantial and often acute infections of the prostate gland, the bladder, kidneys, spermatic cord, and related ducts and testicles, all being defined as chronic urinary tract infection. He also had sinusitis and middle or inner ear infection, diagnosed as labyrinthitis. He had also suffered for many years from a gastric ulcer which resulted in a gastrectomy, but his ulcer and ulcer tendency are permanent conditions. All of these were permanent illnesses, chronic conditions reaching acute stages from time to time. From all of these infirmities, Tiffee had much absenteeism from work. He lost 970 work days in the twelve-year period prior to the date of the accident, actually working at his job for International somewhat less than seventy percent of the work time made available to him by the employer.
*537 His long-time family physician, Dr. Herman Gibson, Jr., wrote a letter on June 23, 1967, stating that due to “chronic urinary tract infection and chronic peptic ulcer disease” he considered claimant “permanently and totally disabled from gainful employment as a laborer since 11 December 1966.” Gibson testified that because of these multiple disorders, not connected with his work, Tiffee was permanently and totally disabled prior to and independent of the injury of May 22, 1966.
On that date claimant was engaged in sliding a stack of bales of pulp from a forklift carrier to its proper place in a railroad freight car for shipment. The stack consisted of four, 400-pound bales, one on top of the other. In the process, the stack of bales became overbalanced and the upper one toppled against and hit claimant’s head, pinning it against the side of the boxcar. Claimant walked to the first-aid station without assistance. He had a small skinned place high on the left forehead. After the accident claimant was listed as an employee until December 11, 1966, but during those approximately seven months he incurred 168 days of absences, attributable to gastric ulcer, labyrinthitis, and acute prostatitis.
On September 23, 1966, while at work, claimant experienced an illness which was diagnosed by Dr. Gibson as labyrinthitis, although he conceded that there was a possibility that this episode was a minor convulsion. The next episode, an identified convulsive seizure, occurred on June 27, 1967, slightly more than twelve months after the accident, and subsequently until the hearing on January 15, 1969, claimant experienced five other convulsive seizures.
Dr. O. J. Andy, a neurologist, first saw claimant on September 9, 1968, two years and four months after the accident. He diagnosed claimant’s condition as cerebral contusions secondary to the accident, and seizures secondary to the cerebral contusions resulting from the accident. Originally Dr. Andy obtained no history of a chronic urinary tract infection; however, he recognized that where a patient has convulsions and an acute infection, the doctor should increase “the medication because the convulsions may be aggravated by the infection.” He based his diagnosis as to the etiology of the convulsions principally upon the case history given to him, but Dr. Andy thought that “any infection any place in the body will aggravate those seizures.” Regular medication appeared to have the seizures under control, at the time he testified.
The Commission found:
1. That claimant has been permanently and totally disabled since December 11, 1966, due to urinary tract infection;
2. That as a result of a head injury sustained on May 22, 1966, claimant has developed epileptic seizures and is permanently and totally disabled due to such condition;
3. That claimant’s first seizure occurred on September 23, 1966, while at work, however, he did not become totally disabled as a result of the seizures until June 27, 1967;
4. That claimant’s pre-existing disability was not shown by medical findings to be a material contributing factor in the results following the injury; and
5. That claimant has been justified in securing medical treatment at his own expense.
Inasmuch as the proof shows that claimant is permanently and totally disabled as a result of the injury and that his urinary tract infection did not contribute to that particular disability, * * * [we are] of the opinion that the apportionment section does not apply.
It is not necessary that a pre-exist-ing infirmity produce industrial disability prior to an aggravating or supplemental injury, or that it be such as normally would necessarily result in disability in time because of the normal progress of the disease. It need not be symptomatic, and may be either active or dormant. See Federal Com *538 press & Warehouse Co. v. Clark’s Dependents, 246 Miss. 868, 152 So.2d 921 (1963); Rigdon v. General Box Co., 249 Miss. 239, 161 So.2d 776, 162 So.2d 863 (1964); Dunn, Mississippi Workmen’s Compensation § 52 (2d ed. 1967). Section 4 of the Act requires the pre-existing infirmity to be a material contributing factor in the results following injury. If it is, the compensation “shall be reduced by that proportion” which the pre-existing infirmity “contributed to the production of the results following the injury.”
It is the effect of the infirmity upon claimant’s physical condition after the accidental injury which is to be measured for purposes of apportionment. The preexisting infirmity itself need not be directly aggravated. This is manifest from the amendments to Mississippi Laws 1958, Chapter 454, section 1, by Mississippi Laws 1960, Chapter 277, section 1. The test is whether the prior infirmity contributed to the employee’s disability as a whole after the accidental injury. See generally, Dunn, Mississippi Workmen’s Compensation §§ 52-54 (2d ed. 1967).
The Commission’s finding No. 4, that claimant’s pre-existing infirmity “was not shown by medical findings toi be a material contributing factor in the results following the injury,” is contrary to the undisputed evidence. Claimant, before the accident, suffered from chronic urinary tract infection and chronic peptic ulcer disease. In fact, his doctor testified that he had been, in a medical sense, permanently and totally disabled from these and other related ailments before the accident of May 22, 1966. However, he was working, although with a large amount of absences from work. Dr. Andy based his diagnosis as to the etiology of claimant’s seizures primarily upon the case history given him by claimant, but he conceded that any infection in the body, and without question claimant had substantial acute infections over a long period of years, would aggravate his seizures.
In short, the evidence reflects that claimant’s pre-existing infirmities, aside from aggravation, were material contributing factors in the results following the accident of May 1966. Also, the evidence shows that infectious conditions were active and contributing to claimant’s disability before the injury, and that they continued thereafter to aggravate and contribute to the results after injury. Claimant’s infirmities were independently producing some degree of disability before the accident ; they continued to operate as a source of disability after the accident. See 2 Larson, Workmen’s Compensation Law § 59.20 (1970). It is sheer logomachy to say that this man’s multiple infirmities before the accident, which continued to impair his body afterward, were not material contributing factors, remaining in effect, in the results following injury.
This construction of the Act and the facts reflected in this record is, we think, in accord with the legislative purpose that an employer should bear the cost of only that proportion of total disability which is actually caused by the accident, and that an employer should not bear the burden of pre-existing infirmities which already existed independently of the injury, and which are material contributing factors in the results following injury.
For these reasons, the judgment of the circuit court is affirmed in part, as to the liability of appellants for payment of workmen’s compensation benefits, reversed in part, and the case is remanded to the Workmen’s Compensation Commission to determine an appropriate percentage of apportionment. See Southeastern Construction Co. v. Dodson’s Dependent, 247 Miss. 1, 153 So.2d 276 (1963).
Affirmed in part, as to liability, and reversed in part and remanded to Workmen’s Compensation Commission to determine proper apportionment.
BRADY, INZER, ROBERTSON and HARPER, JJ., concur.