ON PETITION FOR REHEARING
ROBERTSON, Justice,
for the Court:
I.
The issue of consequence in this workers’ compensation appeal is apportionment. No one questions that Nellie W. Brown suffered a work-connected injury, nor that she is permanently, totally disabled. Employer and carrier argue that Brown’s disability in substantial part is related to pre-injury back trouble and a post-injury car wreck, notwithstanding the Mississippi Workers’ Compensation Commission’s finding of ultimate fact that Brown’s total, permanent disability was “solely as a result of the job-related injury of September 24, 1981.”
*650 On direct appeal this Court affirmed. The case is back on petition for rehearing, augmented by the briefs of eight Amici Curiae.[1] We modify the original opinion, but in the end affirm once more.
II.
On September 24,1981, the sixty-year-old Nellie Brown was employed by Stuart’s, Inc., as manager of a retail clothing store located in the Tupelo Mall in Tupelo, Mississippi. On that date, and while on the job, Brown attempted to prevent a shoplifting and was beaten so severely that she was rendered unconscious. Brown suffered knee and head injuries, a sprained back, and, most significantly, developed a psychiatric injury diagnosed' as severe depressive neurosis. She has not been able to work since that date.
Today’s is not Brown’s first workers’ compensation claim. In 1976 Brown injured her lower back while lifting boxes of inventory. She underwent two surgical procedures known as laminectomies, and on each occasion she was found temporarily, totally disabled. After both surgeries, however, Brown returned to work. The point for the moment is that from March of 1977 leading up to September 24, 1981, Brown was working full time for Stuart’s, Inc.[2]
On December 29, 1983, Brown filed with the Mississippi Workers’ Compensation Commission her motion to controvert. On December 3, 1985, a hearing was held before the Administrative Judge, who on March 18, 1986, entered an order finding Brown permanently and totally disabled. On October 28, 1986, the Commission affirmed. Employer and carrier appealed to the Circuit Court of Lee County, which on January 8,1987, affirmed the Commission’s order. Employer and carrier finally appealed to this Court, arguing that the benefits awarded Brown should have been reduced, as in their view, Brown’s other injuries have contributed to her permanent disability.
III.
A.
For reasons no doubt good and sufficient, our legislature has decreed that the worker will bear that part of the burden of her loss of wage earning capacity as may be attributable to experiences or matters other than a work connected injury. Thus, it is true that a preexisting disability requires reduction of compensation otherwise payable, a reduction by the amount which the preexisting disability contributes to the whole disability found after the injury at issue. See Miss.Code Ann. § 71-3-7 (1972).[3] See also Reichhold Chemical, *651 Inc. v. Sprankle, 503 So.2d 799, 803 (Miss.1987); Road Maintenance Supply, Inc. v. Dependents of Maxwell, 493 So.2d 318, 323 (Miss.1986); and Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1381 (Miss.1986).
In many states these non-compensable-because-apportioned losses are compensated through a “second injury fund.” 2 Larson, The Law of Workers Compensation § 59.20 (1987) (hereinafter “Larson”). Our act provides for such a fund, though its availability and utility are quite restricted and wholly unavailable in a case such as today’s. Miss.Code Ann. § 71-3-73 (Supp. 1988).
Citing the apportionment rule, employer and carrier make much of the fact that there is medical testimony that Brown experienced a fifteen percent permanent, partial medical or functional disability as a result of her prior back problems and surgery. We are thus presented the question whether the “contributing” preexisting disability which will entitle an employer and carrier to apportionment must have been occupationally disabling before the injury complained of, or only medically or functionally disabling.
B.
We begin with the premise that it is a statute we are expounding. We do not inquire what the legislature meant; we ask only what the statute means. Mississippi Insurance Guaranty Ass’n v. Vaughn, 529 So.2d 540, 542 (Miss.1988) (quoting Holmes, Collected Legal Papers, 207 (1920)). Our initial source of meaning lies in the words and phrases employed by the legislature. Beyond this, we seek meaning in the principles and policies embedded in the legislative expression. Given the text, we ask what purpose could best justify the promulgation of this act? We seek that statement of purpose which may best justify the statute today, given the world we live in. These latter sources of meaning become particularly important where, as here, tension and ambiguity may be found among the words of the act. Our task in the end requires that we give to the work of the legislature the most coherent and principled reading available. See McIntire v. Moore, 512 So.2d 687, 689 (Miss.1987); Warren County v. Culkin, 497 So.2d 433, 436 (Miss.1986).
The big picture is important. When a worker is injured on the job and (only when she) suffers an attendant occupational disability, a substantial economic loss has occurred. The quantum of such a loss may be measured and calculated in dollars and cents. The question our law confronts is where that loss will fall, how it must be allocated among the affected persons. Because this is a workers’ compensation case, we give no thought to notions of fault and personal culpability as we pursue this allocation process. See Miss.Code Ann. § 71-3-7 (1972); Road Maintenance Supply, Inc. v. Dependents of Maxwell, 493 So.2d 318, 322 (Miss.1986); Kahne v. Robinson, 232 Miss. 670, 683, 100 So.2d 132, 136 (1958).
In a case such as today’s, we must not ignore that there has been one apportionment already. This first apportionment— which may be found in every workers’ compensation case — is a function of statutory limits on compensation, Miss.Code Ann. §§ 71-3-13 through -25 (Supp.1988). Because of these, we know that a major portion of the worker’s quantifiable pecuniary loss (plus all of the non-pecuniary losses) will fall upon her shoulders and those of her family.[4] Payment of benefits in the maximum amount allowed under the law in the ordinary case of permanent, total dis *652 ability compensates the worker and her family for substantially less than half their actual pecuniary losses.[5] The question for decision is who will bear the remainder of the pecuniary loss resulting from the worker’s occupational disability: (a) the employer, who has at least the option of spreading such losses through insurance and treating compensation insurance as a cost of doing business, a cost to be passed on to the consumers of the employer’s goods or services, or (b) the worker and her dependents, who have far more limited (and economically less realistic) options. Road Maintenance, 493 So.2d at 322; McCluskey v. Thompson, 363 So.2d 256, 259 (Miss.1978).
It is in the above context that we have often held that (1) close questions of com-pensability should be resolved in favor of the worker, e.g., Big “2” Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss.1980), and (2) the act should be liberally construed to carry out its beneficent remedial purpose, Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss.1980). These points of administrative policy have been further influenced by the fact that the employer enjoys legislative protections from other remedies by the worker. Miss.Code Ann. § 71-3-9 (Supp.1972); Road Maintenance, 493 So.2d at 322-23. It is also in this context that we seek meaning in our apportionment statute.
C.
The foundation question is, what is meant by disability? “Incapacity ... to earn wages,” our statutes answer. Miss. Code Ann. § 71-3-3® (Supp.1988).[6] The familiar short-hand expression of the definition is “loss of wage earning capacity.” Robinson v. Packard Electric Division, General Motors Corp., 523 So.2d 329, 331 (Miss.1988); General Electric Co. v. McKinnon, 507 So.2d 363, 365, 368 (Miss.1987); Piggly Wiggly v. Houston, 464 So.2d 510, 512 (Miss.1985); Compere’s Nursing Home v. Biddy, 243 So.2d 412, 413 (Miss.1971). Loss of wage earning capacity is no abstract notion but one to be measured by the flesh and blood realities of the life circumstances of a particular worker. Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss.1980).
*653 An employer takes an employee as he finds her. Insurance Department of Mississippi v. Dinsmore, 233 Miss. 569, 579, 102 So.2d 691, 694 (1958).
Against this backdrop, it is less than surprising that our cases have long accepted that occupational or industrial disability, on the one hand, and medical disability, on the other, are hardly synonymous. See Robinson, 523 So.2d at 331 and cases there cited; Bolton v. Catalytic Construction Co.,[7] 309 So.2d 167, 172 (Miss.1975). Our recent cases have recognized this distinction in the context of employer demands for apportionment. Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 880 (Miss.1986); South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 595 (Miss.1985).
Appellants and supporting Amici argue that no language in the statute prescribes that the apportionment-requiring, preexisting condition be one that has occupationally disabled the worker. This begs the question, as the statutory language similarly fails to decree that such condition be of a medical or functional nature. No help appears in the provision that before apportionment may be ordered the preexisting condition must be “shown by medical findings.” That is but a safeguard, a requirement of proof protecting the injured worker from apportionment by reason of speculation or rumor. Put otherwise, any Section 71-3-3(i) disability, be it functional or occupational, will have a medical etiology.
Still, candor requires concession that our readings of the apportionment statute have been less than consistent. International Paper Co. v. Tiffee, 246 So.2d 535 (Miss.1971) is prominent in a line of cases which suggests that when an employer demands apportionment we look for a preexisting medical infirmity, not a preexisting occupational disability. But a moment’s reflection is required to realize that acceptance of this view puts the Court in the proverbial posture of mixing apples and oranges. For disability purposes our compensation law directs attention to occupational or industrial disability, loss of wage earning capacity, if you will. Yet, for apportionment purposes we are told we must ignore these thoughts and search for a preexisting medical condition and apportion if we find a “contributing” one, wholly without regard to whether that condition had been disabling in an occupational sense. We are told we must apportion, that is, reduce the claimant’s (already statutorily apportioned) claim to compensation for her pecuniary losses, if we find a “preexisting physical handicap, disease or lesion,” notwithstanding that such in no adverse way affected the employee’s wage earning capacity before the accident. What sense does this make, to use a condition that produced no loss of wage earning capacity ex ante as a reason for compensating ex post less than the employee’s full work-connected loss of wage earning capacity? How can that which “results” in no inability to work ex ante “result” (in part) in inability to work ex post?
A separate, contrary and more powerful strand of reasoning may be found in orn-eases — and found controlling. Representative is Bolton, where the worker was able to perform heavy labor involving twisting, bending and stooping up to the date of his injury in spite of the congenital anomaly which consisted of an extra lumbar vertebra. The Court wrote:
Where one enjoys functional[8] ability to perform his work in spite of an existing congenital defect and suffers an injury which aggravates the existing congenital defect, thereafter causing a loss of his functional ability, then [compensation must be awarded] as long as the functional loss continues,.... Simply stated, when an injury causes loss of functional[9] ability, it is compensable.
*654 309 So.2d at 172. [Emphasis supplied] Functional (dis)ability as employed in Bolton is definitionally synonymous with occupational (dis)ability.
Apportionment is considered in Evans v. Continental Grain Co., 372 So.2d 265 (Miss.1979), where the Court, after discussing Bolton, held that apportionment may not be ordered on the basis of a preexisting condition attributable to “those normal degenerative effects accompanying age.” See Riverside of Marks v. Russell, 324 So.2d 759 (Miss.1975); Weaver Pants Co. v. Duncan, 231 So.2d 489 (Miss.1970). See also Emerson Elec. Co. v. McLarty, 487 So.2d 228, 230 (Miss.1986). We discern no rational distinction between such a non-occupational disabling ex ante circumstance and that here, where the worker had occupationally recovered from her previous back trouble.
Marshall Durbin, Inc. v. Hall, 490 So.2d 877 (Miss.1986) becomes important. We there said
The apportionment section of the Act may not be employed to deprive an injured worker of benefits to which he is by law entitled where the sole evidence supporting the claim of apportionment is that the injured worker had a preexisting, asymptomatic degenerative condition.
490 So.2d at 881. See also Quitman Knitting Mill v. Smith, 540 So.2d 623, 629 (Miss.1989).
D.
Judicial construction of similar apportionment statutes in other states is instructive. While earlier cases evidence some of the same confusion suffered by Appellants and Amici on this issue,[10] later cases squarely adopt the rule articulated by the panel in this case: only preexisting occupational disabilities generate a duty to apportion.[11]
For an exhaustive recent treatment of the law of apportionment in the compensation context, see Escambia Cty. Council on Aging v. Goldsmith, 500 So.2d 626, 635 (Fla.App.1986) (en banc) (“An employee who has been suffering from a prior condition [such as preexisting osteoarthritis] which has not disabled him from performing gainful employment may recover benefits for a subsequent injury due to a com-pensable accident despite the presence of such preexisting condition.”); and Sunland Center at Miami v. Rudolph, 521 So.2d 132, 134 (Fla.App.1988) (“Permanent total disability benefits are subject to apportionment if the prior condition was disabling at the time of the accident and continued to be so at the time the award is made.”) See also Larson, § 59.22(a).
E.
Fidelity to text requires that we read “results following injury” within the apportionment statute, Section 71-3-7, in the light of Section 71-3-3(i)’s definition of disability.[12] The “results” we search for are the extent of wage earning capacity “fol *655 lowing injury,” the worker’s occupational (dis)ability, if you will. This search may meaningfully be made only against the backdrop of the worker’s pre-injury wage earning capacity, her pre-injury occupational (dis)ability. A “preexisting physical handicap, disease or lesion” which did not impair wage earning capacity ex ante by definition cannot be that which impairs wage earning capacity ex post.
After reviewing the language of Section 71-3-7 and the principles imbedded within our Workers Compensation Act, and as well, nearly all of the previous Mississippi cases relating to apportionment, we find the following as the best and most coherent — though far from perfect — reading[13] our law may be given. In work-connected injury cases where the evidence establishes (a) successive injuries experienced by the employee where following the first injury the employee engages in full-time employment for a substantial period of time prior to the second injury; or (b) a preexisting (symptomatic or asymptomatic) condition which causes the employee to experience no pre-injury occupational disability, apportionment may not be ordered.
On the other hand, in cases where (1) there is evidence of a medically cognizable, identifiable, symptomatic condition which antedated the injury; and (2) the employee experienced some absence of normal (for him or her) wage earning capacity, then apportionment must be ordered.[14]
Treatise authority supports the view we take.
Apart from special statute, apportiona-ble “disability” does not include a prior non-disabling defect or disease that contributes to the end result. Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable, and except in states having special statutes on aggravation of disease,[15] no attempt is made to weigh the relative contribution of the accident and the preexisting condition to the final disability or death. Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability in the compensation sense.
* * * * * *
Of course, the matter is entirely different if the degenerative condition is itself the cause of the disability for which compensation is claimed, quite apart from the effect of the industrial accident. Thus, it may be found on the facts of a particular case that after the period of temporary disability caused by the accident was completed, any subsequent *656 long range disability stemmed entirely from a preexisting infirmity.
The essential distinction at stake here is between disability that independently produces all or part of the final disability, and a preexisting condition that in some way combines with or is acted upon by the industrial injury.
Larson, §§ 59.21-59.22(b) (1987) (footnotes omitted).
On rehearing Appellants and Amici argue that the reading we give the apportionment statute will discourage employers from hiring the handicapped and thus undermine public policy. The point is hard to follow. Rational employment decisions refer to whether the worker is physically able to perform the tasks of the job. But what of the case of a worker who experiences some pre-employment medical or physical handicap which does not call into question her ability to do the work? It defies reason to suggest that the average employer would hire such a worker only if he may apportion according to preexisting medical disability. Conversely, if in an act of benevolence the employer hires an occupationally handicapped worker, the employer may comfortably assume that apportionment will lie in the event of a subsequent workplace injury.
Appellants/Amici’s argument founders further. They would apportion in cases of asymptomatic pre-employment conditions of which the worker may not be aware. How such a reading of the apportionment statute may encourage hiring the handicapped escapes us. An apportionment statute may rationally support a hire-the-handicapped policy only (a) where both worker and prospective employer are aware of the handicap and (b) where the handicap may affect the worker’s physical ability to perform the job’s tasks.
F.
Nellie Brown’s prior back trouble was not “a preexisting, asymptomatic condition” of the sort present in Marshall Durbin. But that is not the point. The principle underlying Marshall Durbin and the other cases discussed above is that not all preexisting conditions generate a duty to apportion, only those which have produced in the claimant a preexisting occupational disability. Following her back troubles, Nellie Brown returned to full time employment with Stuart’s in March of 1977 and she worked without significant interruption until September 1981. During this time she satisfactorily performed the duties of her job. This is more than a sufficient predicate for a finding of fact that Brown experienced no preexisting occupational disability. Much the same can be said of the 1982 car wreck. Accepting that Brown was injured in this wreck, that in no way undercuts the conclusion that her permanent occupational disability resulted from the September 1981 shoplifting incident and assault.
In the end, employer and carrier’s appeal runs aground upon our limited scope of review. In Fought v. Stuart C. Irby Co., 523 So.2d 314 (Miss.1988), we stated, as we have in dozens of other cases:
The Workers’ Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding_ If the Commission’s findings of fact and order are supported by substantial evidence, all appellate courts are bound thereby.... This is so, even though the evidence would convince this Court otherwise, were we the factfinder.... Stated differently, this Court will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.
523 So.2d at 317. (citations omitted) See also Robinson v. Packard Electric Division, General Motors Corp., 523 So.2d 329, 332 (Miss.1988); Champion Cable Construction Co., Inc. v. Monts, 511 So.2d 924, 927 (Miss.1987).
PETITION FOR REHEARING DENIED; OPINION MODIFIED; AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER and SULLIVAN, JJ., concur.
*657 DAN M. LEE, P.J., concurs in result only.
PITTMAN and BLASS, JJ., not participating.

. On petition for rehearing the Court has received and considered briefs of Amici Curiae, Fireman’s Fund Insurance Company, International Paper Company, American International Group of Insurance Companies, Highlands Insurance Company, The Virginia Insurance Reciprocal, United States Fidelity and Guaranty Company and Aetna Casualty and Surety Company, supporting rehearing and reversal. The Mississippi Trial Lawyers Association has appeared as Amicus Curiae and filed a brief supporting affirmance. See Rule 29, Miss.Sup.Ct. Rules.

. Stated summarily and in outline form, the essential facts of the case are these:
(1) Brown worked for Stuart’s, Inc. at all times relevant to the case — 1976 to the date of her disabling injury.
(2) Brown injured her back in 1976 while lifting boxes and the injury twice required surgery.
(3) While recovering from surgery, Brown received temporary, total disability.
(4) Brown did not claim any permanent, partial disability even though, from a medical standpoint, she suffered from a 15% impairment to the body as a whole.
(5) Brown returned to her duties at the store and was able to discharge fully all of her duties.
(6) In September, 1981, while at the store she received a severe beating resulting in various injuries, including head and back trauma.
(7) The constant head and back pain which Brown experiences as a result of her physical injuries causes extreme depression for which Brown is being treated.
(8) The Commission found Brown to be 100% permanently disabled as a result of her depression and declined to apportion her recovery because of the 1976 back injury.

.In pertinent part, the statute reads:
Where a preexisting physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be *651 reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury.
Miss.Code Ann. § 71-3-7 (1972).

. We accept that our law of the workplace ought to be structured so that the worker is given substantial incentives to take care for her own safety. Such incentives have been well imbedded in our Workers’ Compensation Act in that, even in the case of a maximum award, the worker is still saddled with roughly half of her pecuniary losses and all non-pecuniary losses. We do not complain of this, only that this first legislative apportionment is generally ignored by those who would have us read Section 71-3-7 most strongly against the injured worker.

. The point is well made by considering as illustrative computations presented in Road Maintenance:
Assuming full compensation without apportionment, an average weekly wage of $100.00 and a normal work life expectancy to age 65, the [pecuniary] loss upon death at 49, computed variously, looks something like this:
A Total [Pecuniary] Loss B Amt. of Loss Allocated To Maxwell’s Dependents Amt. of Loss Allocated To Employer & Carrier
Lost Wages 1986-2002 $88,400.00 $63,650.00 $24,750.00
Loss, adjusted for inflation & using 3 month Treasury bill market yield 71,011.00 46,263.00 24,748.00
Loss, adjusted for inflation & using 3-vear Treasury bill market yield 64,769.00 41,029.00 23,740.00
Source: Mississippi Research and Development Center, July, 1986.
The point is apparent though modest. The present legislative system of compensation death benefits mandates that approximately two-thirds of the immediate ... [pecuniary] loss attendant upon a worker’s death be shouldered by his dependents, although no one talks much about the fact.
Road Maintenance, 493 So.2d at 323 n. 1.

. The statutory definition of disability in its entirety reads:
(i) “Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and *653 the extent thereof must be supported by medical findings.

.Bolton employs the phrase "functional ability to perform work.” 309 So.2d at 172. Such functional (disability is what we mean by occupational (dis)ability and is quite distinct from medical (dis)ability.

. See footnote 7, supra.

. See footnote 7, supra.

. See, i.e., National Auto & Cas. Ins. Co. v. Industrial Acc. Comm’n, 216 Cal.App.2d 204, 30 Cal.Rptr. 685 (1963); Royal Globe Ins. Co. v. Suson, 626 S.W.2d 161 (Tex.App.1981).

. See, e.g., Elliot v. Workers’Compensation Bureau, 435 N.W.2d 695, 697-98 (N.D.1989) (where claimant had a preexisting, nondisabling wrist condition which prolonged his recovery from a compensable injury, apportionment not applicable); Wyndham v. R.A. & E.M. Thornley & Co., 291 S.C. 496, 354 S.E.2d 399 (1987) (permanent and total benefits awarded notwithstanding pri- or injury with 25% whole body impairment, 500 week limit is for single injury and disability not reduced by prior recovery of benefits); Wilder v. Barbour Boat Works, 84 N.C.App. 188, 352 S.E.2d 690 (1987) (When preexisting, nondis-abling condition is aggravated by loss of earnings ability rather than physical infirmity); Lewis v. 4-E Corp., 469 So.2d 599 (Ala.1985) (where preexisting arteriosclerotic condition had not affected claimant’s ability to work, error to apportion for preexisting weakness); Perry v. Mar-Bax Shirt Co., 16 Ark.App. 133, 698 S.W.2d 302 (1985) (where claimant worked at hard manual labor for twelve years after first injury with no occupational disability, apportionment inapplicable when claimant had second back injury).

.For what it is worth, the apportionment statute is the second unnumbered paragraph of the section prescribing liability for payment of compensation, Miss.Code Ann. § 71-3-7 (1972), the first paragraph of which begins "Compensation shall be payable for disability...." [Emphasis supplied.]

. Today’s opinion does not address either "occupational disease” or heart attack cases. Indeed, heart attack cases seem sui generis. For a fair consideration of our struggle to rationalize heart attack cases within the language and scope of the compensation act, see Dunn, Mississippi Workers’ Compensation §§ 90-99 (3d ed. 1982 and Supp.1988).

. In their briefs in support of rehearing, Appellants and supporting Amici argue that a number of our prior decisions recognize the proposition that preexisting, non-occupationally disabling handicaps or conditions may be held to require apportionment. Among these cases Employer and Carrier list the following: General Electric Co. v. McKinnon, 507 So.2d 363, 369 (Miss.1987); Cross Mfg., Inc. v. Lowery, 394 So.2d 887, 888-89 (Miss.1981); Bennett v. United Parcel Service, 382 So.2d 469, 474 (Miss.1980); M.D. Hayles Lumber, Inc. v. Hamilton, 366 So.2d 1075, 1076 (Miss.1978); Stuart Mfg. Co. v. Walker, 313 So.2d 574, 575 (Miss.1975); Jenkins v. Ogletree Farm Supply, 291 So.2d 560, 563 (Miss.1974); International Paper Co. v. Tiffee, 246 So.2d 535, 538 (Miss.1971); Better Living Markets, Inc. v. Smith, 241 So.2d 152, 155 (Miss.1970); Chicago Mill and Lumber Co. v. Brown, 221 So.2d 82, 86 (Miss.1969); Petroleum Equip. Co. v. Lancaster, 197 So.2d 485, 488 (Miss.1967); Walters Bros. Builders v. Loomis, 187 So.2d 586, 590 (Miss.1966); Communications Equip. Co. v. Burke, 186 So.2d 765, 768 (Miss.1966); Bill Williams Feed Service v. Mangum, 183 So.2d 917, 920 (Miss.1966); Rigdon v. General Box Co., 249 Miss. 239, 245, 161 So.2d 776, 777 (1964). To the extent that there may be language within the opinions in these cases inconsistent with what we say this day, that language stands modified.

.Mississippi has such an occupational disease statute allowing recovery for aggravation of disease. Miss.Code Ann. § 71-3-3(b). Obviously, the instant case does not involve an occupational disease.