490 So.2d 877 (1986)
MARSHALL DURBIN, INC. and Liberty Mutual Insurance Company
v.
John A. HALL.
No. 56568.
Supreme Court of Mississippi.
June 4, 1986.
Wade H. Lagrone, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, for appellants.
William S. Lawson, Tupelo, Thomas J. Lowe, Jr., Jackson, for appellee.
Before ROY NOBLE LEE, P.J. and DAN M. LEE and ROBERTSON, JJ.
*878 ROBERTSON, Justice, for the Court:

I.
This workers' compensation appeal must be affirmed under our familiar substantial evidence rule and for that reason, it ordinarily might not merit an opinion. Nuances of the distinction between medical disability and occupational disability are implicated, however, both with respect to the injured worker's claim of permanent total disability and, second, with respect to Employer and Carrier's claim for apportionment. We address these questions below.
We further write to make clear our distaste for the position taken by this Employer, to-wit: that the injured worker is not disabled, that he is capable of substantial gainful employment  "but not with us". We regard Employer's refusal to reemploy this longtime worker as the best evidence of all that the worker is indeed permanently totally disabled  unless, of course, Employer has some less laudatory reason for denying reemployment.

II.

A.
On April 12, 1982, John A. Hall, a 57 year old male with a sixth grade education, was employed by Marshall Durbin, Inc. in Tupelo, Mississippi, unloading boxcars, running a mill, mixing feed and preparing medications. Prior to that date he had been steadily employed in laboring type jobs, having a long history of farm work before he went to work for Marshall Durbin. Prior to April 12, 1982, he had experienced no disability from any back conditions, nor any symptoms of any back problem.
On April 12, 1982, while on the job, Hall attempted to open a rusty door on a railroad boxcar. He had to use a pry bar to open it. In so doing he slipped and fell and immediately experienced great pain. Hall described his injury in these words:
Okay. I was opening boxcars. I was unloading shelled corn. And you open the bottom of the car, and it runs out and carries it to the bin. So I had unloaded three cars, and the fourth car was kind of rusty, the bottom hard to open. So I had to have a pipe put in the thing to turn the lever to open it. So I put it in there and it was hard, so I had it up like this. And I came down (indicating). When I did, the pipe slipped out of the place what it was in, and I fell forward  and trying to keep from hitting my head on the car. And also my left leg went  hit the little gravel and stuff on the railroad. And it went straight out and come straight up. And then it was just like somebody hit you in the back with a sledgehammer.
And it was for, I guess, 30 minutes I just rolled around trying to get up. The guy that was running the mill, he couldn't hear me holler because the mill was making too much racket. So finally I got pulled around and got up, and got up where I could make him hear me. And he carried me to the hospital. So that's about it.
Hall was immediately hospitalized where he was treated by Dr. John McFadden of Tupelo. Thereafter, Hall was seen by Dr. Tom McDonald of Tupelo and in due course was referred to Dr. John G. Gassaway, an orthopedic surgeon practicing in Starkville, Mississippi.
On January 21, 1982  some ten weeks after the accident  Hall came under the care and treatment of Dr. Michael H. Lynch, an orthopedic surgeon in Memphis, Tennessee. In response to Hall's complaints of low back pain, Dr. Lynch procured the services of a local neurosurgeon and performed a rhizotomy, a procedure used to destroy the nerve and, accordingly, eliminate the pain one is experiencing. Shortly thereafter Dr. Lynch released Hall to return to work provided he avoid lifting weights in excess of 15 pounds.
On January 5, 1983, Hall returned to Dr. Lynch's office stating that he had done well until the past week when he had begun to experience "a recurrence of rather severe pain with some radiation of the pain into both of his legs". After examination, which included x-rays, Dr. Lynch formed *879 the impression that the developing instability pattern and recurrent pain would require a lumbar fusion. Later that spring Hall consented to this surgery and on May 6, 1983, Hall underwent the fusion.
Dr. Lynch described Hall's present level of disability as
A permanent partial physical impairment of thirty (30) percent of the body as a whole and permanent lifting restrictions of thirty-five (35) to forty (40) pounds occasionally, fifteen (15) to twenty (20) pounds repetitively, and permanent restriction on repetitive bending, stooping, squatting, kneeling and working in confined places.
Dr. Lynch further gave his opinion that Hall's disability was related to the April 12, 1982 accident.

B.
Procedurally, John A. Hall initiated this matter when he filed with the Mississippi Worker's Compensation Commission his motion to controvert on May 19, 1983. At the hearing before the Administrative Judge, Employer and Carrier took the position that Hall was not disabled and that certainly he was not permanently disabled. Alternatively, Employer and Carrier asserted that Hall's present disability, if any, was attributable, in whole or in part, to a congenital back defect which would have predated the April 12, 1982 injury and at the very least entitled Employer and Carrier to an apportioned award. See Miss. Code Ann. § 71-3-7 (1972).
On September 18, 1984, the Administrative Judge rejected Employer and Carrier's position. He found that Hall's average weekly wage on April 12, 1982, was $190.40 per week. He further found that Hall had experienced various temporary disabilities, not relevant here, and that "solely as a result of the job-related injury of April 12, 1982, the Claimant [Hall] is permanently and totally disabled".
Employer and Carrier petitioned the Mississippi Workers' Compensation Commission for review, urging that the Administrative Judge had erred in finding Hall totally and permanently disabled and had erred in failing to apportion the award of compensation. On February 26, 1985, the Commission entered its order to the effect that the order of the Administration Judge contained no error of fact or law and was thereby affirmed.
Employer and Carrier continue to appeal, pressing the same points, next before the Circuit Court of Lee County, Mississippi. On April 15, 1985, the Circuit Court affirmed the decision of the Mississippi Workers' Compensation Commission. The present appeal has followed. For the reasons set forth below, we likewise affirm.

III.

A.
Employer and Carrier first ask that we reverse the Commission's determination that Hall is permanently, totally, occupationally disabled. Such an appeal necessarily brings Employer and Carrier face to face with the restricted scope-of-review authority we have in such matters.
Our function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission. Georgia-Pacific Corporation v. Veal, 484 So.2d 1025, 1027 (Miss. 1986). If there should be such substantial credible evidence, we are without authority to disturb that which the Commission has found, even though that evidence would not be sufficient to convince us were we the factfinders. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985); South Central Bell Telephone Company v. Aden, 474 So.2d 584, 589-90 (Miss. 1985); Staple Cotton Services Association v. Russell, 399 So.2d 224, 228-29 (Miss. 1981); King & Heath Construction Co. v. Hester, 360 So.2d 692, 694 (Miss. 1978).
The evidence recited at the outset of this opinion is so substantial that we have no authority to disturb the Commission's finding that Hall is permanently, totally occupationally disabled. The matter is so *880 clear that, were it not for two matters to be noted below, the point would hardly merit comment.

B.
First, Employer and Carrier insist upon blurring the distinction between medical or physical impairment, on the other hand, and industrial or occupational disability, on the other. They seize upon the opinion of Dr. Lynch that Hall had experienced a thirty (30) percent permanent partial impairment to the body as a whole. What they ignore is the essentially uncontradicted evidence that John A. Hall was gainfully employed prior to April 12, 1982, as he had been for many years prior thereto, and that, as a result of his accident of that day, he is now unable to obtain any employment.
The disability contemplated by the Act is an occupational disability, not a medical disability. Miss. Code Ann. 75-3-3(1) (Supp. 1984). An employee is entitled to compensation to the extent that he has been incapacitated to earn wages. Richey v. City of Tupelo, 361 So.2d 995, 998 (Miss. 1978). That an injured employee retains substantial functional abilities in no way undercerts the conclusion that he may be totally occupationally disabled. Dunn, Mississippi Workmens' Compensation § 74, p. 88 (3d ed. 1982).
It avails an employer nothing that a worker may have had an asymptomatic preexisting degenerative condition. Such a person experiences no pre-accident occupational disability. Our compensation Act concentrates upon the impact of the accident upon the employee's wage earning capacity. An industrial accident may well, in a medical or physiological sense, only aggravate an theretofore existing (but asymptomatic) degenerative condition.
Beyond this, Hall has made wholly reasonable and wholly unsuccessful efforts to secure "the same or other employment". Miss. Code Ann. § 71-3-3(i) (1972). Hall on two occasions offered unrebutted evidence, first, that he had attempted to secure reemployment with Marshall Durbin but had been rejected; second, that he had sought employment at other places in the Tupelo area and been rejected; third, that he had filled out an application at the local employment office; and, fourth, that he had even applied for work at a furniture plant in an adjoining county without success. Such unrebutted proof is sufficient unto the day. See Thompson v. Wells-Lamont Corp., 362 So.2d 638, 641 (Miss. 1978).

C.
Here we encounter the second feature of the position of Employer and Carrier which, one which deserves caustic comment.
From the outset, Hall, both personally and through his attorney, asserted his strong desire to go back to work. More so than in any compensation case this Court has seen in recent years, we have before us an injured worker who sincerely and persistently has sought employment and wishes to avoid life as a disabled worker, drawing only the meager compensation benefits allowed by law, and, as everyone knows, upon which no one can maintain a decent standard of living.
Instead of commending Hall for this attitude, however, Employer and Carrier seek to penalize him for it. They make much ado about the fact that at the first hearing Hall both personally and through his attorney stated that he wanted his job back far more than he wanted compensation. This, Employer and Carrier tell us, proves that Hall really isn't disabled after all. Such a cynical argument has not been made in quite a while, as in Marshall Durbin's next breath we are told "but not us". Durbin had made clear that it has no intention of rehiring this faithful former employee it contends is not disabled.
Counsel appears to have recognized the untenable position his employer client has put him in with this statement in his brief:
The employer's refusal to take him [Hall] back may have been a cause for the Commission to act punitively but nevertheless, it should be clear that if *881 Appellee's [Hall's] loss of earning capacity was not total in character, then an award of permanent total disability is erroneous.
However much such an argument might tempt this Court to act punitively toward Employer and Carrier, we need not go beyond the familiar substantial evidence rule to affirm the determination of the Commission that Hall is permanently totally disabled. Suffice it to say that in searching the record for the substantial evidence basis for the Commission's determination of ultimate fact, the most persuasive evidence present is Durbin's refusal to reemploy Hall. When coupled with Hall's testimony regarding his own disability, his various good faith but unsuccessful efforts to obtain employment and the medical testimony of Dr. Lynch, the evidence in support of the Commission's finding is not only substantial but overwhelming.
One final point of law must be noted in passing. That the Act requires a disability finding to be supported by medical evidence affords an Employer and Carrier no comfort in the present context. Specifically, the fact that Dr. Lynch would give only a thirty (30) percent permanent partial medical disability rating in no way is inconsistent with the proposition that there are medical findings supporting Claimant's permanent, total occupational disability. Medical testimony is required only to support the fact of "incapacity and the extent thereof". Miss. Code Ann. § 71-3-3(i) (1972). Because, as explained above, the Act is concerned with occupational or industrial disability, with loss of wage earning capacity, it would be a rare case when a physician or surgeon will have the professional qualifications, training or expertise to determine an injured worker's disability within the Act.

IV.
Durbin argues that it is entitled to reversal of that portion of the Commission's order as denies apportionment. Here Employer and Carrier rely heavily upon the testimony of Dr. R.H. Franks called as their expert witness. Dr. Franks never saw, cared for or treated Hall. He merely reviewed the medical records. He offered the opinion that Hall had a preexisting spondylosis which was the cause of ninety (90) percent of his present disability.
Counsel for Employer and Carrier on appeal would have us think that the record is uncontradicted in this respect. The problem is that, in his cross-examination of Dr. Lynch, counsel stated this thesis emphatically and clearly and had it rejected. Dr. Lynch stated that the April 12, 1982 accident "began the subsequent events which led to his [Hall's] ultimate need of a back fusion". We find counsel's effort in that deposition to extract a concession from Dr. Lynch that Hall's disability was the product of a preexisting spondylosis, a congenital anomoly, were wholly unsuccessful.
Beyond this, Employer and Carrier again run aground upon their persistent ignoring of the distinction between occupational and medical disabilities. Assuming arguendo that Employer and Carrier are correct and that Hall experienced an asymptomatic pre-April 12, 1982 spondylosis, it avails them nothing. John A. Hall on April 12, 1982, was gainfully employed. He was experiencing no occupational disability on that date as the result of any such condition, nor had he prior thereto. The apportionment section of the Act may not be employed to deprive an injured worker of benefits to which he is by law entitled where the sole evidence supporting the claim of apportionment is that the injured worker had a preexisting, asymptomatic degenerative condition. South Central Bell Telephone Company v. Aden, 474 So.2d 584, 595 (Miss. 1985).
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.