733 So.2d 285 (1998)
Susie Baxter LUCAS, Appellant,
v.
ANGELICA UNIFORM GROUP and American Motorists Insurance Company.
No. 97-CC-00797 COA.
Court of Appeals of Mississippi.
October 13, 1998.
Rehearing Denied January 12, 1999.
Certiorari Denied April 15, 1999.
*286 Frank H. Shaw, Jr., Kosciusko, Attorney for Appellant.
Andrew D. Shull, Grenada, Attorney for Appellees.
Before McMILLIN, P.J., and DIAZ and PAYNE, JJ.
PAYNE, Judge, for the Court:

PROCEDURAL HISTORY
¶ 1. This case involves a workers' compensation claim filed by Susie Lucas on August 19, 1994, against her employer, Angelica Uniform Group, located in Ackerman, Mississippi. On May 16, 1996, the administrative law judge decided that the claimant's injury was compensable and ordered Angelica Uniform to pay disability benefits to the claimant. Feeling aggrieved by this ruling, Angelica Uniform filed its notice of appeal to the Full Commission. The Full Commission affirmed the administrative law judge's order. Additionally, the Commission addressed the statute of limitations claim and found that the claim was not barred by the two year statute of limitations. The Commission based its decision on the fact that the claimant's condition was a "latent-injury." Feeling aggrieved by this latest ruling, Angelica Uniform appealed to the Choctaw County Circuit Court. The circuit court reversed the prior decision of the Full Commission, stating that the decision was not supported by substantial evidence and was against the overwhelming weight of the evidence. Further, the court noted that the claim relating to the carpal tunnel syndrome was barred by the statute of limitations. Feeling aggrieved by the decision entered against her, the claimant appealed this ruling.
¶ 2. Holding that the circuit judge essentially re-weighed the facts, we reverse the ruling of the Circuit Court of Choctaw County and remand this case to the Commission for reinstatement of the Commission's decision.

FACTS
¶ 3.The claimant is a forty-eight-year-old resident of Mathiston, Mississippi, who dropped out of school in the ninth grade. She has worked as a sewing machine operator as well as having worked on a factory line. The claimant began working for Angelica Uniform in March of 1992. Her duties at Angelica involved inspecting shirts. Within a few months of employment with Angelica Uniform, the claimant complained of pain in her hands and wrists, and consequently, she sought treatment from Dr. Charles Ozborn. On cross examination, the claimant accepted the facts and conclusions presented to her by the employer's attorney, that Dr. Ozborn advised her at that time that she probably *287 suffered from carpal tunnel syndrome which was likely caused by her employment.
¶ 4. Dr. Ozborn referred the claimant to Dr. Crompton who explained through a medical note that he would speak with the claimant about the connection between the claimant's work obligations and that work's aggravation of her condition. Dr. Crompton reaffirmed his diagnosis with the benefit of Dr. John Schottland's EMG studies, which indicated that the claimant had an abnormal bilateral severe slowing across the carpal tunnels with clear-cut evidence of denervation in the form of marked reduction of the motor unit potentials on motor stimulation. Dr. Crompton performed right endoscopic release surgery on the claimant's right wrist in June of 1993, followed by left endoscopic release surgery on the claimant's left wrist in July of 1993.
¶ 5. On May 31, 1994, after continued complaints, Dr. Mitchell Myers performed a second EMG. This procedure suggested bilateral median neuropathy at the wrist and suggested a repeat carpal tunnel surgery. Dr. Crompton performed an open right carpal tunnel release with external neurolysis of the median nerve on May 31, 1994. In February of 1995, Dr. Crompton diagnosed a left wrist triangular fibrocartilage tear and lunotriquetral ligament tear and repaired each on February 21, 1995.
¶ 6. Feeling that she should be compensated, the claimant filed her petition to controvert against Angelica in 1994. The administrative law judge stated that the claimant suffered compensable injuries to her wrists as a result of her employment with Angelica Uniform. The administrative law judge noted that the claimant was temporarily totally disabled for certain periods of time: July 12, 1993-August 13, 1993; April 31[sic], 1994-July 12, 1994; February 21, 1995-June 7, 1995. Likewise, the administrative law judge specifically noted in her order that the employer must:
Pay to the claimant temporary total disability benefits in the amount of $113.90 per week due and payable for the following periods, with credit for any such payments heretofore made by the employer and carrier or for wages earned by the claimant during these periods of time: a. July 12, 1993 through August 13, 1993; b. April 31[sic], 1994 through July 12, 1994; c. February 21, 1995 through June 7, 1995. The employer is entitled to a credit of $770.00 against this award.
¶ 7. The administrative law judge also stated that the employer was obligated to furnish medical treatment to the claimant and its failure to pay installments of temporary total disability also mandated a ten percent penalty under Miss.Code Ann. § 71-3-37(5) (Rev 1995). The Commission affirmed the administrative law judge's decision, while separately addressing the issue of when the claimant discovered that her work related injury was compensable. The Commission addressed the contradictions in the claimant's testimony in which she said on direct examination that Dr. Crompton told her of the compensability of her injury in 1993 and yet on cross examination agreed to a factual conclusion as stated by the employer's attorneythat Dr. Ozborn had diagnosed the condition and told her it was job related in 1992. The Commission stated that her "misrepresentations" were "hardly intentional" and "simply reflect a great deal of confusion on the part of Lucas as to the many questions being posed to her."

LAW AND DISCUSSION OF ISSUES

STANDARD OF REVIEW
¶ 8. The standard of review utilized by this Court when considering an appeal of a decision of the Workers' Compensation Commission is well settled. The Mississippi Supreme Court has stated that "[t]he findings and order of the Workers' Compensation Commission are binding on the Court so long as they are `supported by substantial evidence.'" Vance v. Twin *288 River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). An appellate court is bound even though the evidence would convince that court otherwise if it were instead the ultimate fact finder. Barnes v. Jones Lumber Co., 637 So.2d 867, 869 (Miss.1994). We are also mindful of the beneficent purposes of the Workers' Compensation Act. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss.1990) (stating that statutes are construed liberally and where there is an even question, we are to find in favor of the injured worker). Furthermore, this Court will reverse only where a Commission order is clearly erroneous and contrary to the weight of the credible evidence. Vance, 641 So.2d at 1180; see also Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994). "The Mississippi Supreme Court [as well as the Mississippi Court of Appeals] will overturn a[C]ommission decision only for an error of law or an unsupportable finding of fact." Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss. 1991) (citations omitted). Therefore, this Court will not overturn a Commission decision unless it finds that the Commission's decision was arbitrary and capricious. Id.

ISSUE PRESENTED

I. WHETHER OR NOT THE FINDING OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION THAT THE REPETITIVE MOTION INJURY CLAIM OF SUSIE BAXTER WAS NOT BARRED BY THE STATUTE OF LIMITATIONS IS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 9. To the satisfaction of the administrative law judge and the Full Commission, the claimant fulfilled the requirements needed to support her right to disability payments. However, the circuit judge dismissed these rulings, stating that there was not substantial evidence to support the Commission's order, and the weight of the evidence did not support compensation. Therefore, the circuit judge reversed the Commission by stating that the statute of limitations had run against the claimant.
¶ 10. While the thrust of this opinion focuses on whether the Commission did in fact have substantial evidence to have held as they did, thus warranting compensation, we deem it necessary to address this above cited issue presented by the claimant. This will compliment our analysis and illustrate the necessity of employing the appellate standard of review.
¶ 11. The Commission found and the claimant first argues that the discovery rule should control the matter before this Court. Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 827 (Miss.1991). Thus, she argues, the issue to be answered is whether she invoked her right to disability benefits with the Commission within two years after she discovered or reasonably should have discovered the work related nature of her injury. The employer recognizes the discovery rule as set forth in Taplin and admits that the rule is applicable here. Furthermore, the employer concedes that carpal tunnel syndrome is a gradual infirmity and is not immediately recognizable. Even so, Angelica states that it is entitled to having its case affirmed, basing its logic upon the fact that the claimant failed to pursue her legal remedy within the correct period of time as noted in Miss.Code Ann. § 71-3-35(1) (Rev.1995) which states:
Regardless of whether notice of injury was received, if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefor shall be forever barred.
¶ 12. With that statute in mind, the employer contends that in June or July of 1992 the claimant sustained an injury within the meaning of the above noted section of the code. That is the time when she first sought medical treatment. The employer *289 contends that the claimant's action is barred because the employer did not provide any non-medical compensation benefits to the claimant within two years of this date, and because she did not file an application for benefits (petition to controvert) with the Commission until August of 1994. It should be noted that the employer provided disability insurance for its employees and that the company paid the claimant $70 a week for eleven weeks. Furthermore, the administrative law judge deducted those payments from the benefits ordered to be paid to the claimant. Whether those payments are to be considered "compensation" under § 71-3-35(1) we do not here decide. However, for over forty years it has been the law in this State that providing such coverage does not equate to nor relieve an employer of providing worker's compensation. Riddell v. Cagle's Estate, 227 Miss. 305, 309, 85 So.2d 926, 927 (1956).
¶ 13. Due to the facts of this case, we direct attention to the discovery rule in order to define what time should be considered when calculating the statute of limitations. The discovery rule holds that the statute of limitations does not begin to run until the compensable nature of the injury becomes reasonably apparent to the claimant. Taplin, 586 So.2d at 827.
¶ 14. In Taplin, "[t]he claimant clearly knew that he had sustained an injury which continued to require medical attention, but this awareness did not rise to the level of giving him notice of compensability." Id. The supreme court also stated:
The statute begins to run when the claimant is or reasonably should be aware of having sustained a compensable injury, but the statute is deemed not to have begun running if the claimant's reasonably diligent efforts to obtain treatment yield no medical confirmation of compensable injury.

Id. (emphasis added). In the case before this Court, there are two dates offered on which the work relatedness of the injury potentially became apparent to the claimant. Necessarily, the dates are pivotal in analyzing this issue. The two dates are June/July 1992the date advanced by the employer; the date the employer states that the claimant knew her injury was related to her employmentand 1993the date advanced by the claimant as the period of time she became cognizant of the relationship between her injury and her employment.
¶ 15. Available to the administrative law judge, the Commission, and the circuit court was evidence concerning the claimant's knowledge of the injury, which included the claimant's deposition testimony, and the claimant's trial testimony as well as medical notations from both Dr. Ozborn and Dr. Crompton. Conspicuous is the fact that Dr. Ozborn did not testify. There is no medical evidence from Dr. Ozborn about compensability.
¶ 16. We note that the record reflects a medical notation, dated June 3, 1992, which states:
Dx: Paresthesia or Numbness of Hands, possibly Circulatory-most probably Carpal Tunnel Syndrome.[1]
¶ 17. The record indicates that Dr. Crompton began his care of the claimant on March 16, 1993. Dr. Crompton's deposition testimony indicated that he tested the claimant for conditions consistent with problems originating in her hands. According to Dr. Crompton, positive results were indicated by the Phalens test and Tinels sign, both of which are indicative of problems originating in the region of the hand.
¶ 18. By deposition, Dr. Crompton testified that:

*290 Based upon the history that I got from her and based upon the history that we'vethe facts that we've talked about, I think that her carpal tunnel syndrome is related to her job at Angelica Uniform.
¶ 19. The medical notes of Dr. Crompton state on April 13, 1994 the following:
I also believe there is a possibility that it [the problem with her hands] may just be her work that is causing her problem[,] and she may have some chronic problems.... We will discuss this with her Workman's Compensation[,] and we will contact her once a decision has been made.
¶ 20. While we ourselves are not weighing the claimant's testimony listed below, we do note this information in order to provide tangible evidence of what the administrative law judge, the Commission, then the circuit court, had available to review in order to fully assess the situation. To begin with, the claimant testified that Dr. Crompton was the first doctor to advise her of her work related injury. The claimant stated when questioned on direct examination:
Q. And who was the first doctor that told you that Angelicaor did a doctor ever tell you that Angelica was the cause of the pain in your arm or not?
A. Dr. Crompton.
¶ 21. Under cross examination where the question of time of diagnosis was coupled with notice of compensability, the claimant answered as follows:
Q. So whenever you saw Dr. Ozborn in the summer of 1992, it's your testimony he told you that you had carpel tunnel syndrome and he told you that it had been caused by your job, right?
A. Yes sir.
* * * * * *
Q. Now, if his [Dr. Ozborn's] records indicate he saw you once in June of '92 and once in July of '92, I would be would I be correct that that's when he told you that you had carpal tunnel and that he thought it was related to your work at Angelica?
A. Yes, sir.
¶ 22. Reviewing this portion of the trial transcripts would indicate that the claimant was confused when answering carefully crafted questions by Angelica Uniform's attorney and did testify to facts that could be taken as a declaration against her interest. Addressing the inconsistencies in her statements, the Commission noted the following:
We have reached the conclusion that the contradictions in her testimony are hardly intentional misrepresentations and simply reflect a great deal of confusion on the part of Lucas as to the many questions being posed to her. This is certainly understandable given her very limited education and the formal surroundings which she no doubt found very uncomfortable and confusing.
¶ 23. Having received this testimony, the Commission weighed it in conjunction with the deposition submitted by Dr. Crompton, along with the tendered exhibits, ultimately affirming the decision of the administrative law judge. The Commission added in its opinion that the two year statute of limitations began in 1993 rather than 1992 as advanced by the employer.
¶ 24. On appeal, the Choctaw County Circuit Court reversed the Commission's order, the basis being that the Commission's decision was not supported by substantial evidence and was against the overwhelming weight of the evidence. Further, the circuit judge stated that the claim was barred by the statute of limitations. We can not say the circuit court was correct in its ruling, which in part was predicated upon reliance of medical proof consisting of only one medical notation which indicates that the claimant was diagnosed with carpal tunnel syndrome in 1992.
¶ 25. That document, dated as June 3, 1992, does not suggest nor do we infer that *291 the claimant was notified that the carpal tunnel syndrome was job related. Justice Prather, writing for the supreme court in Taplin, noted that the statute is tolled until the claimant has "reason to foresee or ascertain" the likelihood of the compensable injury "from which incapacity and its extent can reasonably be ascertained by medical evidence." Taplin, 586 So.2d at 827.
¶ 26. Apparently, the circuit court, employing its interpretation of the facts, surmised that the self-effacing testimony of the claimant coupled with the generic medical notation (June 3, 1992 note), created a determination which could only lead toward reversal of the Commission. Certainly this Court can not sustain the rationale of the circuit court based only on a declaration against interest by the claimant, when that testimony is not undergirded by medical fact.
¶ 27. In spite of evidence noted by the circuit court concerning the weight of the evidence, this Court is faced with a standard of review that determines how we are to evaluate workers' compensation cases. The Mississippi Supreme Court noted in Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991) the following:
As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985). Substantial evidence, though not easily defined, means something more than a "mere scintilla" of evidence, Johnson v. Ferguson, 435 So.2d 1191 (Miss.1983) and that it does not rise to the level of "a preponderance of the evidence." Babcock & Wilcox Co. v. McClain, 149 So.2d 523 (Miss.1963). It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred." State Oil & Gas Bd. v. Mississippi Min. & Roy. Own. Ass'n, 258 So.2d 767 (Miss. 1971).
The same standard of review is to be employed by the circuit court as well. Barnes, 637 So.2d at 869 (holding that an appellate court is bound even though the evidence would convince that court otherwise if it were instead the ultimate fact finder).
¶ 28. In Benoist Elevator Company, Inc., v. Mitchell, 485 So.2d 1068 (Miss. 1986) (latent injury/statute of limitation case), the Mississippi Supreme Court reversed the order of the Circuit Court of Bolivar County which had reversed the Commission. Id. In reversing the circuit court, the supreme court noted that the test to be applied on workers' compensation matters was the substantial evidence test. As the supreme court stated in Benoist, 485 So.2d at 1070, (citing Georgia-Pacific Corp. v. Veal, 484 So.2d 1025 (Miss. 1986)), "[w]e think that the test is whether or not the decision of the commission is supported by substantial evidence, and that if so the decision by the commission should be upheld."
¶ 29. Furthermore, the Benoist court stated:
In this case the circuit court reversed the commission because in its opinion the claimant had proved by a preponderance of the evidence that he was entitled to compensation. This is not the test. The question is whether the order of the commission was supported by substantial evidence.
Id. (citation omitted). Along those lines the supreme court noted:
The commission is in the same position as a jury, which might have brought in a verdict for either the plaintiff or the defendant, and where the jury has enough evidence to justify its findings the court affirms the case. In workmen's compensation cases there may be *292 substantial evidence to justify the commission in allowing the claim in toto or there may be substantial evidence to find a partial disability ... and the commission may have been justified in either finding. In workmen's compensation cases, the Workmen's Compensation Commission is the finder of facts, and if those facts are based on substantial credible evidence, the Supreme Court lacks power to disturb them, even though the evidence would not convince the court were the court the fact finder.
Id. (citation omitted).
¶ 30. Essentially, it appears that the circuit court reviewed the evidence and in its opinion decided that the overwhelming weight of the evidence precluded compensable recovery by the claimant. However, the standard we must live by is whether the fact finding Commission had evidence which would support its rationale and resolution of the case. Therefore, based on the evidence in the record and the Commission's findings of fact, this Court concludes that the claimant's knowledge of compensability was 1993 as the beginning of the statutory limitation period, and not the earlier date of 1992. This information has led this Court to conclude that the claimant's citation of error has merit, though we decide this case based upon the substantial evidence test.
¶ 31. Because we reverse the circuit court and reinstate the Commission's order approving benefits, there is no need to address any other issue presented in this appeal.

CONCLUSION
¶ 32. The Commission found that the injury to the claimant fell under the discovery rule for purposes of determining the statute of limitations period and that the condition of the claimant was one that may not with reasonable certainty be recognized as work related with the first onset of symptoms. In the same vein, we cannot state that the very first day that the claimant visited Dr. Ozborn for the problem in her wrists, she was advised that she was suffering from a job related and compensable injury. There is simply no medical testimony, nor any written word undergirding the proposition advanced by the employer, which is that the claimant knew she was disabled in the summer of 1992 from an injury which originated through her employment with Angelica Uniform.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF CHOCTAW COUNTY IS REVERSED AND THE ORDER OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS REINSTATED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and SOUTHWICK, JJ., concur.
NOTES
[1] While we are unable to confirm that this medical notation originated from the office of Dr. Ozborn, the medical note does have the initials CAO. Dr. Ozborn's name is Charles Ozborn. The claimant noted that she visited him during the summer of 1992, during the time of this notation. In any event nothing attributable to Dr. Osborn states anything about the cause nor compensability of the injury.