777 So.2d 53 (2000)
ENTERGY MISSISSIPPI, INC., Appellant,
v.
Ricky L. ROBINSON, Appellee.
No. 1999-WC-01057-COA.
Court of Appeals of Mississippi.
December 12, 2000.
Andrew D. Sweat, Alan C. Goodman, Jackson, Attorneys for Appellant.
Roger K. Doolittle, Jackson, Attorney for Appellee.
EN BANC.
*54 McMILLIN, C.J., for the Court:
¶ 1. This case originated before the Mississippi Workers' Compensation Commission, which awarded Ricky L. Robinson compensation based upon a finding that he had suffered a job-related injury that left him permanently partially disabled. Entergy, Robinson's employer, appealed that decision without success to the Circuit Court of Hinds County, and now brings the matter before this Court. Entergy does not dispute the fact that Robinson was injured in the course of his employment. Rather, the company raises two basic issues for decision. The first involves the question of whether Robinson met his burden of showing a permanent decrease in his wage earning capacity traceable to his injury. The second issue, raised in the alternative since it begins with the assumption that Robinson proved some decreased wage earning capacity traceable to the accident, is whether the Commission erred in not apportioning his disability between the after-effects of the job injury and Robinson's previous injuries similar in nature received in a series of non-work-related incidents. We conclude that the Commission applied an incorrect legal standard in determining that Robinson had carried his burden of proof, which requires that we reverse and remand this case to the Commission for further appropriate proceedings. In light of the fact that there are to be further proceedings on the claim, we find it necessary to also address the issue of the Commission's failure to apportion.

I.

Facts
¶ 2. Robinson worked as a meter reader for Entergy. He had a long history of back problems that apparently originated with a non-work-related accident on a riding mower in 1983. His condition was aggravated, according to his medical records, by two subsequent motor vehicle accidents, neither of which was work-related and the last of which occurred in approximately August 1993. Even before this second accident, his treating physician was concerned that, unless his condition improved, it could force him to discontinue his work with Entergy. Ultimately, in January 1994, the physician authorized Robinson to return to his work since Robinson reported to him that his employer was "willing to be a little bit lenient with him" in performing the duties of his work. Robinson himself testified that Entergy changed the nature of his work from one requiring extensive walking to one involving "doing service work," which he admitted caused less pain to his back. At that point, Robinson's treating physician concluded that Robinson was suffering from a ten percent disability to the body as a whole.
¶ 3. Then, on December 14, 1994, Robinson was involved in yet another vehicle accident, this one being while he was in the course of his employment with Entergy. Medical records indicate that he presented himself to the same physician complaining of back pain radiating down into his lower extremities. An MRI revealed no marked physical change in his condition other than "minimal degenerative changes which are unchanged from a year ago." Robinson continued to complain of back pain and his treating physician suggested the possibility of further surgical intervention, but released him to light duty work while Robinson considered whether he desired surgery or not. Approximately seven months later, Robinson informed the treating physician that he would not consider surgery. The physician at that point assigned Robinson a partial permanent impairment rating of fifteen percent to the body as a whole arising out of back condition.
¶ 4. Though released to light duty work in January 1996, Robinson did not return to his former position at Entergy because that position, as well as all other meter reader positions, had been eliminated during the period of Robinson's convalescence. This was done in accordance with a company *55 policy decision announced prior to Robinson's injury to contract for those services with third-party independent contractors. Further, Robinson made no effort to obtain alternative employment from January 1996 until July 28, 1997a time shortly prior to the scheduled hearing date in this proceeding.
¶ 5. On this evidence, the Commission concluded that "[i]t is clear that the claimant has suffered a permanent medical impairment of 15 per cent to his body as a whole as a result of the injury in question." (emphasis supplied). The Commission further found that Robinson's wageearning capacity had been reduced in the amount of $300 per week and awarded permanent partial disability benefits under Section 71-3-17 of the Mississippi Code accordingly.

II.

Issue One: Disability
¶ 6. The burden of proof lies with the claimant to demonstrate that he has, in fact, suffered a disability within the meaning of the workers' compensation statutes. The statute defines "disability" to mean "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment...." Miss.Code Ann. § 71-3-3(i) (Rev.2000). Case law has long held that, in order to meet that burden, it is an integral part of the claimant's proof that he show (a) an inability to resume his former work, and (b) the effort he has made to seek employment in another or different trade for which he might be suited. Sardis Luggage Co. v. Wilson, 374 So.2d 826, 828 (Miss.1979).
¶ 7. In this case, the Commission excused Robinson's nineteen-month long period of inactivity in searching for alternate employment on the basis that Entergy's failure to return Robinson to his former employment was sufficient proof of the existence of his disability. The Commission cited as primary authority for that position the case of Marshall Durbin, Inc. v. Hall, 490 So.2d 877 (Miss.1986). In that case, the Mississippi Supreme Court, in an admittedly "caustic comment," took Marshall Durbin to task for not rehiring Hall when he was anxious to return to work. Id. at 880. The court noted that Hall had expressed a desire to return to work but that Marshall Durbin had refused to rehire him, while at the same time arguing to the Commission that Hall's own expressed desire to return to work was adequate proof that he was not suffering from any disability. Id. Calling that position a "cynical argument," the court went on to say that "the most persuasive evidence present [of Hall's disability] is Durbin's refusal to reemploy Hall." Id. at 880-81. However, despite its evident disdain for Marshall Durbin's argument, the supreme court still did not find the refusal to rehire, standing alone, to be conclusive; rather, the court went on to say that this evidence,
[w]hen coupled with Hall's testimony regarding his own disability, his various good faith but unsuccessful efforts to obtain employment and the medical testimony of Dr. Lynch, the evidence in support of the Commission's finding is not only substantial but overwhelming.
Id. at 881 (emphasis supplied).
¶ 8. Aside from the fact that Marshall Durbin cannot be made to stand for the proposition asserted by the Commission, it is also distinguishable on the basis that, in the case now before us, Entergy offered an entirely plausible explanation for its failure to rehire Robinson unrelated in any way to his ability to perform on the job, unlike the situation in Marshall Durbin where the employer appeared to simply obstinately refuse to return a willing worker to an existing position. Certainly, the fact that Robinson's former job was no longer available would be a legitimate consideration in assessing available jobs for which Robinson might be qualified, since the elimination of those positions would necessarily adversely impact job availability in the relevant market. See Georgia Pacific Corp. v. *56 Taplin, 586 So.2d 823, 828 (Miss.1991); Piper Indus., Inc. v. Herod, 560 So.2d 732, 735 (Miss.1990). However, finding that the unavailability of Robinson's former position has some relevance in the decision process is not the same as saying that the failure to return a recuperated worker to his former position because the position no longer exists is conclusive proof of disability. In reaching this conclusion we are mindful that the 1992 case of Jordan v. Hercules, Inc., in what appears to be dictum, seemed to propose a rule that failure to rehire, of itself, created a prima facie case of disability. Jordan v. Hercules, Inc., 600 So.2d 179, 183 (Miss.1992). However, that rule, announced without any citation to authority, appeared to conflict with prior decisions requiring both (a) failure to return to the old employment together with (b) proof of efforts to obtain other employment in order to establish disability. Thompson v. Wells-Lamont Corp. 362 So.2d 638, 641 (Miss.1978). We also observe that the supreme court, after deciding Jordan v. Hercules, appeared to temper its announcement somewhat in the case of Hale v. Ruleville Health Care Center, where the court combined its holdings in Jordan v. Hercules and Thompson v. Wells-Lamont Corp. into the "Jordan/Thompson Rule," which does take into consideration the effort to obtain other suitable employment. Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1228 (Miss.1997). For that reason, we do not find that Jordan v. Hercules acts as further support for the Commission's decision.
¶ 9. We conclude that the Commission erred as a matter of law when it refused to consider the extent of Robinson's efforts to find other suitable employment for which he might be suited in his post-injury condition when assessing the extent of his permanent partial disability. In doing so, we do not purport to prejudge the effect of evidence of the delay in seeking employment after his treating physician had released him to return to some form of employment, nor do we attempt to resolve any dispute over the vigorousness with which Robinson pursued other employment once he began the process. There may well be reasonable explanations for these and other relevant considerations that would not result in Robinson being barred from recovery. We merely observe that, as a matter of law, it was necessary for the Commission to address those questions in assessing Robinson's degree of disability. This Court is obligated to reverse in the case where we determine that the Commission has improperly applied the law, and we find that to be the situation we now face.

III.

Issue Two: Apportionment
¶ 10. The Commission found that Robinson's entire fifteen percent disability to the body as a whole was traceable to his on-the-job injury and declined Entergy's request that any disability awarded be apportioned between his post-accident condition and his already-diminished physical capacity attributable to his prior back injury. The Commission points to no medical evidence to support its finding that all of Robinson's problems arose out of the work-related accident. The only credible evidence touching on that point is Robinson's treating physician's records which clearly demonstrate that Robinson was already suffering from a ten percent disability to the body as a whole at the time of his on-the-job injury. We do not re-weigh the evidence to determine where we might conclude the weight of the evidence lies. Hollingsworth v. I.C. Isaacs and Co., 725 So.2d 251(¶ 11) (Miss.Ct.App. 1998). Rather, our duty is to affirm the Commission's fact-finding if there is substantial evidence in the record to support those findings. Lucas v. Angelica Uniform Group, 733 So.2d 285(¶ 8) (Miss.Ct. App.1998). However, in the case where there is no evidence at all to support a finding of fact, this Court is obligated to intercede. Montana's Sea Kettle Restaurant *57 v. Jones, 766 So.2d 100(¶ 7) (Miss.Ct. App.2000). We find that to be the situation we face in this instance and determine that the Commission was manifestly in error in finding that Robinson's entire disability was due to his on-the-job accident.
¶ 11. Nevertheless, having so concluded, we also observe that such a conclusion does not necessarily require an apportionment. Something other than a pre-existing medical condition must be shown in order to invoke the provisions relating to apportionment. Asymptomatic conditions or even symptomatic conditions that have not had a demonstrable adverse impact on the claimant's wage-earning capacity, even if proven, do not require an apportionment of benefits. Stuart's, Inc. v. Brown, 543 So.2d 649, 655 (Miss.1989). However, in this case, there can be no doubt that Robinson's physical condition resulting from his previous back injuries had already had some detrimental impact on his ability to earn wages, since there is a substantial indication, confirmed by Robinson himself, that his prior back problems were so severe that he was limited in his ability to perform his job and that, but for certain modifications in his duties agreed to by Entergy, there was a substantial likelihood that he would have been unable to continue in his position.
¶ 12. If, after looking at the issue relating to Robinson's post-recovery efforts to find other employment on remand, the Commission determines that Robinson has suffered some loss of wage-earning capacity due to the after-effects of his on-the-job vehicular accident beyond that already existing, then the Commission must move to the next step. It must undertake the necessary analysis to apportion that diminished wage-earning capacity between his already-existing diminished capacity and whatever further diminishment the Commission finds to have arisen out of the injuries suffered on the job.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEE.
KING and SOUTHWICK, P.JJ., MOORE, MYERS, and THOMAS, JJ., concur. PAYNE, J., concurs in part and dissents in part joined by IRVING, J. LEE, J., concurs in part and dissents in part joined by BRIDGES and PAYNE, JJ.
LEE, J., Concurring in Part, Dissenting in Part:
¶ 14. I have great deference for the majority's opinion and concur with their holding in issue two; nevertheless, I must dissent from the opinion of the majority as it pertains to issue one. I maintain that the majority has espoused an improper interpretation of Jordan v. Hercules, 600 So.2d 179, 183 (Miss.1992), as well as overlooked findings of fact in the opinion of the administrative law judge and Commission regarding Robinson's attempts to find employment.
¶ 15. Unlike the majority, I find that Jordan allows the claimant to establish a prima facie showing of total disability by presenting evidence that he or she sought employment with his or her previous employer, and the employer refused to rehire them. Id. at 183. If the claimant can show this, it does not require the claimant to present evidence regarding "reasonable" attempts, if any, to obtain employment elsewhere. Id.; see also Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1226 (Miss.1997). Instead, the burden shifts to the employer to show partial disability or no loss of wage-earning capacity, and to prove that the efforts of the employee to obtain employment were a "sham." Hale, 687 So.2d at 1226-27.
¶ 16. The majority was erroneous in its conclusion that "the Commission erred as a matter of law when it refused to consider the extent of Robinson's efforts to find other suitable employment for which he might be suited in his post injury condition when assessing the extent of permanent partial disability." It has been said in *58 Hale, that when the ruling of an administrative law judge is affirmed by the Commission without comment it becomes its ruling. Hale, 687 So.2d at 1226. Thus, is the situation in the case at bar.
¶ 17. The administrative law judge specifically noted the testimony of Robinson regarding his job search in her "summary of relevant evidence." She stated that Robinson attested to the fact that he had conducted job searches in July and August of 1997, noting places of specific application, as well as acknowledging that Robinson had made a visit to the unemployment office in May of 1997. Additionally, the judge commented on Robinson's reason for the delay in his job search. Furthermore, when the administrative law judge discussed loss of wages in the "decision" portion of her opinion she stated:
"[t]he claimant performed a substantial job search, albeit not prior to July of 1997, and has not found employment. There is no evidence in the record to suggest that the claimant's explanation for deferring his job search (the hopes of Dr. Barrett's referral to a pain management clinic being authorized) was other than truthful."
For the aforementioned reasons, I conclude that the administrative law judge did not err in her application of the law or her findings of fact.
¶ 18. As stated by the majority, our job is not to re-weigh the evidence and circumscribe where the weight of the evidence rests. Hollingsworth v. I.C. Isaacs and Co., 725 So.2d 251(¶ 11) (Miss.Ct.App. 1998). Instead, we are required to affirm the Commission's findings of fact if there is substantial evidence in the record to support the same. Lucas v. Angelica Uniform Group, 733 So.2d 285(¶ 8) (Miss.Ct. App.1998). Substantial evidence was given to support the decision of the administrative law judge's holding for permanent partial disability; therefore, I would affirm as to issue one.
BRIDGES and PAYNE, JJ., join this separate written opinion.
PAYNE, J., Concurring in Part, Dissenting in Part:
¶ 19. I agree with the opinion authored by Judge Lee in regard to both issues one and two. However, I write separately because I do not believe that once the claimant has shown that he applied for work with the employer in whose employment he was injured and was refused re-employment that the burden is then on the claimant to prove that there is not other work to be had. As I read the statutes and cases, the employer has the burden to rebut or refute the claimant's evidence. See Hale, 687 So.2d at 1226; Jordan, 600 So.2d at 183; Thompson, 362 So.2d at 641. What troubles me most is the majority's statement that the employer had "an entirely plausible explanation for its failure to rehire," and therefore the inference is that an employer can rebut the claimant's prima facie case by simply abolishing the job.
¶ 20. Workers' compensation laws are to be construed liberally in favor of the claimant and the doubtful situations are to be resolved in his favor. See Walker Manuf. Co. v. Butler, 740 So.2d 315(¶ 24) (Miss.Ct.App.1998). I do not find it fair to say that the claimant's burden to prove that he was disabled can be thwarted by an employer's abolishing his old job without the employer's even trying to find him a new job within the company that will fit his limitation.
¶ 21. The "Jordan rule" to which the majority refers states:
Where there is a finding of permanent partial disability, the claimant bears the burden of making a prima facie showing that he has sought and has been unable to find work "in the same or other employment" pursuant to Miss.Code Ann. § 71-3-3(i). When the claimant, having reached maximum medical recovery, reports back to his employer for work, and the employer refuses to reinstate or rehire him, then it is prima facie that the *59 claimant has met his burden of showing total disability. The burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage earning capacity.
Jordan, 600 So.2d at 183 (citations omitted). Jordan said that returning and not being rehired is prima facie proof of disability, which can be rebutted by the employer. Id. However, I would add that such obligation to rehire cannot be dodged by some loophole wholly within the control of the employer, such as in the present case where the injured worker's former job has since been eliminated. Determining whether or not one is disabled should not require so high a hurdle. If one is able to do some work and such work is available at the old employer's place of business, if the old employer does nothing to try to utilize the services of the now impaired worker, then that, to me, does not meet the burden of rebutting the worker's disability.
¶ 22. Once disability has been established, questions of degree of industrial disability and of apportionment can then be discussed. But, as previously stated, the disability cannot be denied just because the employer abolished the old job. The original question of disability has to be decided in the light of what the injured worker can do. Jordan, 600 So.2d at 183 ("Generally, `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment.") That having been established, only then would the question become relevant concerning the injured worker's diligence in his search to find work within his limitations. I do not read Jordan to say that a disabled person does not have a responsibility to look for work. Rather, it merely states that the burden shifts to the employer to show that the injury did not prevent the worker from continuing to work within his wage-earning capacity. Id.
¶ 23. I believe the majority opinion has misconstrued the Jordan rule and has improperly now imposed a duty upon the injured worker to find work should his former job no longer be available and his former employer be unwilling to find other suitable employment at that job for the worker. I feel that the majority opinion has now effectively shifted the standard out of balance and set unreasonable requirements for an injured worker while allowing the employer to evade his duty as previously set forth in Jordan and Thompson. For these reasons, I must respectfully dissent.
IRVING, J., joins this separate written opinion.