LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. William Wright began working at Binswanger Mirror Co. in Grenada, Mississippi, in 1974. Wright was employed by Binswanger until his job was terminated on June 11, 1999. Wright worked as a load operator, loading mirrors and glass, in part, by gripping the pieces with his hands. In the months prior to his termination, Wright complained of severe pain and weakness in his arms, hands and fingers. Wright also testified that he would frequently lose control of his arms and hands, causing the loading machine to chip the glass. Wright further testified that the pain prevented him from sleeping at night. During this time, Walter Sullivan, Wright’s supervisor, cited Wright nine times for poor on-the-job performance.
¶ 2. Wright sought medical treatment from Dr. Richard Reid during the spring of 1999. Dr. Reid referred Wright to Dr. Cooper Terry, an orthopaedist. Dr. Terry diagnosed Wright with bilateral carpal tunnel syndrome (“CTS”) on April 1, 1999. Four days after his job with Binswanger was terminated, Wright filed for, and was granted, disability benefits with the Social Security Administration.
¶ 3. On October 17, 2000, Wright filed a petition to controvert with the Mississippi Workers’ Compensation Commission alleging that he suffered from work-related CTS. Binswanger and Travelers Insurance Company, Binswanger’s carrier, denied compensability. On February 5, 2004, a hearing was held before an administrative law judge (ALJ), and the opinion issued on March 23 found that Wright suffered from work-related CTS. The ALJ awarded benefits commensurate with a permanent, total disability.
¶ 4. Binswanger and Travelers (hereinafter collectively referred to as Binswanger) filed a petition for review, and the Commission held a hearing on the matter. On March 2, 2005, the Commission affirmed the ALJ’s findings, and Binswanger sought review in the Circuit Court of Grenada County. On September 19, 2005, the circuit court affirmed the Commission’s ruling; it is from this ruling that Binswanger appeals, arguing numerous issues concerning whether the Commission’s findings are supported by substantial evidence. Bin-swanger also attacks the Commission’s reliance on the testimony of Glenn Forten-berry, a vocational rehabilitation expert, and the admission of Wright’s deposition into evidence.
¶ 5. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 6. The Commission sits as the ultimate fact-finder. Accordingly, the *349 Commission may accept or reject an ALJ’s findings. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). This Court will affirm the Commission’s findings of fact if they are supported by substantial evidence. Id. In other words, “[t]his Court will reverse an order of the [Commission] only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Id. Doubtful claims should be resolved in favor of compensation, so as to fulfill the beneficial purposes of statutory law. Sharpe v. Choctaw Elecs. Enters., 767 So.2d 1002, 1006(¶ 19) (Miss.2000).
I. ARE THE COMMISSION’S FINDINGS SUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 7. Binswanger argues that the Commission erred in finding that CTS was the cause of Wright’s disability, as Wright’s health problems stem from intervening and superceding causes. Binswan-ger further argues that the Commission should have apportioned Wright’s benefits pursuant to Mississippi Code Annotated Section 71-3-7 due to his preexisting diabetes and neurological complications.
¶ 8. Binswanger points to the deposition testimony of Dr. D.L. Harrison, Wright’s physician since 1980. Wright complained of dizziness during his examination with Dr. Harrison on May 5, 1999. Dr. Harrison examined Wright and ordered an MRI, the results of which, in Dr. Harrison’s opinion, indicated that Wright had suffered a stroke. On May 21, Dr. Harrison referred Wright to neurologist Dr. Michael DeShazo, whose records reflected that, although Wright complained of slurred speech in May, he could find no evidence of a stroke during his examination of Wright on June 7. On June 14 and 28 Wright returned to Dr. Harrison, again complaining of dizziness and confusion. Wright was examined by Dr. Harrison several times during the following months due to persistent complaints of dizziness, shoulder pain, and stiffness in his hands. Bin-swanger further points to Wright’s history of diabetes and Dr. Harrison’s testimony that the diabetes could have exacerbated the CTS. Binswanger argues that this testimony presents compelling evidence that, at a minimum, any benefits should have •been apportioned.
¶ 9. In Stuart’s, Inc. v. Brown, 548 So.2d 649, 655-56 (Miss.1989), our supreme court held that where “(1) there is evidence of a medically cognizable, identifiable, symptomatic condition which antedated the injury; and (2) the employee experienced some absence of normal wage earning capacity, then apportionment must be ordered.” The testimony presented does not support a conclusion that Binswanger is entitled to apportionment, as Wright suffered from diabetes and glaucoma for years prior to his termination from Bin-swanger, yet continued to fulfill his work obligations to his employer. Additionally, although Dr. Harrison’s testimony indicates that Wright experienced symptoms which could be the result of a stroke, our supreme court has found that “close questions of compensability should be resolved in favor of the worker” and that “the act should be liberally construed to carry out its beneficent remedial purpose.” Id. at 652 (citing Big “2” Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss.1980); Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss.1980)). As there was a divergence in opinions regarding the theory that Wright’s disability stemmed from a stroke, we find substantial evidence to support the Commission’s decision to affirm the findings of the AL J.
¶ 10. Binswanger argues that Wright failed to present evidence regarding his wage earning capacity and that he *350 failed to present evidence that he sought employment following his termination from the company. Binswanger further argues that Wright “has suffered no loss of wage earning capacity whatsoever as a result of his CTS.” These assertions are sufficiently contradicted by the record, as Glen For-tenberry, a vocational consultant, testified that Wright suffered from CTS and that Wright’s CTS, his eighth-grade education, his lack of experience in other fields and the dismal job market limited his ability to compete with others in the current labor market. Fortenberry further testified that in his opinion Binswanger could not accommodate Wright by making adjustments to the demands he faced as a load operator, as the operator must have constant use of his hands. Dr. Terry gave Wright a permanent medical impairment of 20% in both the left and right upper extremities. Additionally, Wright was involuntarily released from his employment at Binswanger in June 1999. The ALJ found that Wright sought employment until he was hired as a security guard at a school where he made $3,063.75 in 2003.
¶ 11. The burden of proving disability within the meaning of the workers’ compensation statute rests with the claimant. Entergy Miss., Inc. v. Robinson, 777 So.2d 53, 55(¶ 6) (Miss.Ct.App.2000). The workers’ compensation statute defines “disability” as an “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment....” Miss.Code Ann. § 71 — 3—3(i) (Rev.2000). A claimant seeking permanent partial disability must show “(a) an inability to resume his former work, and (b) the effort he has made to seek employment in another or different trade for which he might be suited.” Entergy, 777 So.2d at 55(¶ 6). Our supreme court has held that “where a permanent partial disability renders a worker unable to continue in the position held at the time of injury, such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury.” McDonald v. I.C. Isaacs Newton Co., 879 So.2d 486, 489-90(¶ 15) (discussing Meridian Prof'l Baseball Club v. Jensen, 828 So.2d 740, 747(¶ 21) (Miss.2002)). Such a presumption arises when the claimant establishes that he has made a reasonable, however fruitless, effort to find work in his usual employment, or presents other proof of his inability to perform the substantial acts of his usual employment. Id. “Rebuttal can be shown by all the evidence concerning wage-earning capacity, including the claimant’s education and training, age, continuance of pain, and any other related circumstances.” Id.
¶ 12. The testimony established that Wright was unable to perform the acts necessary to continue his usual employment, as the CTS limited his dexterity and caused substantial pain. As Binswanger failed to rebut this presumption, we do not agree that the Commission erred in affirming the decision of the ALJ. These arguments are without merit.
II. DID THE COMMISSION ERR IN RELYING ON FORTENBER-RY’S TESTIMONY?
¶ 13. Binswanger argues that the ALJ erred in relying on testimony presented by Fortenberry, a vocational consultant who testified on Wright’s behalf. Binswanger argues that Fortenberry’s testimony was not based upon sufficient facts or data, as Fortenberry did not review the depositions of Drs. Reid, Terry and Harrison, had not toured the plant where Wright had been employed, or observed Wright’s former job.
*351 ¶ 14. We note that Procedural Rule 8 of the Mississippi Workers’ Compensation Law relaxes the general rules of evidence, “so as to permit the introduction of any relevant and competent evidence.” Nevertheless, parties must still place objections on the record to preserve arguments for appeal. See Sonford Prods. Corp. v. Freels, 495 So.2d 468, 473 (Miss.1986) (overruled on other grounds) (party’s argument on appeal regarding reliability of expert opinion found meritless when the argument was not presented to the administrative judge).
¶ 15. As no such objection was raised, we find this argument to be without merit.
III. WAS IT AN ABUSE OF DISCRETION TO ADMIT WRIGHT’S DEPOSITION?
¶ 16. Binswanger’s final argument is that the ALJ erred in admitting Wright’s deposition into evidence, as Wright was available to testify at the hearing.
¶ 17. In discussing the admissibility of depositions, our supreme court has previously held that, as an administrative agency, the Commission possesses “authority to relax and import flexibility to those procedures where in its judgment such is necessary to implement and effect its charge under the Mississippi Workers’ Compensation Act.” Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380-81 (Miss.1986). The court further opined that, “[i]t is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules.” Id. We, likewise, decline to find reversible error in the admission of Wright’s deposition, as Binswanger had the opportunity to address the deposition in Wright’s cross-examination. Additionally, the deposition reveals nothing that was not covered during Wright’s testimony. At best, the admission constitutes harmless error. This issue is without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.